Branko BOGDANOV, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 96SC34.

Supreme Court of Colorado,
En Banc.

June 16, 1997.

Rehearing Denied July 28, 1997.

David F. Vela, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, for Petitioner.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Laurie A. Booras, Assistant Attorney General, Criminal Enforcement Section, for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

The defendant, Branko Bogdanov (Bogdanov), was convicted under a complicity theory of second degree burglary of a warehouse[1] and theft;[2] and of criminal conspiracy to commit theft.[3] On appeal, Bogdanov argued, among other things, that the standard jury instruction on complicity violated his right to due process of law. The court of appeals disagreed, relying on *People v. Close*, 867 P.2d 82 (Colo.App.1993). *See People v. Bogdanov*, No. 92CA1623, slip op. at 6–8 (Colo. App. Dec. 14, 1995) (not selected for official publication). We granted certiorari to determine whether the pattern complicity instruction violates due process. We conclude that it does not, and affirm the court of appeals in upholding Bogdanov's convictions of theft and burglary under a complicity theory.

## I.

The prosecution presented the following evidence at trial. On April 22, 1990, Bogdanov along with three women entered a warehouse clothing store in Fort Collins, Colorado. Two of the women distracted the sales clerks at one end of the store by asking several questions about the merchandise. Bogdanov and the third woman were at the other end of the store near the office door. While Bogdanov held up a large pair of pants, the third woman slipped behind him and entered the store office. The woman emerged from the office about 30 seconds later, after which Bogdanov and the three women exited the store together.

A fourteen-year-old who witnessed the activities of Bogdanov and the third woman immediately reported to a store employee that the woman had been in the office. The employee rushed outside and yelled "excuse me" to the four customers, but the group ran to their car and sped away. The employee obtained a license plate number from the departing car driven by Bogdanov, returned to the office, and called the police. He then checked the office safe, and discovered that five bank bags containing deposits were missing. The store manager later testified that she had entered the safe fifteen minutes prior to the incident for change, and that the bank bags with the deposits were in the safe at that time. The bank bags had contained approximately $2200 in cash, $1100 in checks, and some loose change.

The Fort Collins Police Department issued a dispatch regarding the suspected theft, including a description of Bogdanov's car, a description of the four occupants,[4] and the license plate number. Later that same day, Dan Dyer, a Wyoming Highway Patrol officer, spotted Bogdanov's vehicle. He stopped the car and, after confirming with the Fort Collins Police that the four persons in the car fit the description of those wanted for theft, arrested Bogdanov and the three female passengers. Dyer found about $1000 in cash on Bogdanov's person, and approximately $400 was later found on the persons of the three females. In addition, Pete Baker, an investigator with the Fort Collins Police Department, testified that when he searched the car, he found about $10 to $15 worth of change scattered about the car. No checks were found.

Pursuant to the investigation, Detective Michael West of the Fort Collins Police Department prepared two photo lineups, one of six females, and the other of six males. The fourteen-year-old witness identified Bogdanov as the male he had seen in the store. He also identified two of the females who were with Bogdanov at the warehouse. The man-

---

1. § 18–4–203, 8B C.R.S. (1986).

2. § 18–4–401, 8B C.R.S. (1986 & 1996 Supp.).

3. §§ 18–2–201, –4–401, 8B C.R.S. (1986 & 1996 Supp.).

4. The dispatch mistakenly described the occupants as three males rather than one male and three females.

ager of the clothing store identified the third female from the photo lineup. Another store employee chose a male from the lineup who was not Bogdanov, but identified one of the three women who was with Bogdanov at the store.

In December 1991, the case proceeded to trial. The trial judge provided the jury with several instructions, including one on complicity. The jury found Bogdanov guilty of second degree burglary, theft, and criminal conspiracy to commit theft. Bogdanov was ultimately sentenced to five years incarceration for burglary, five years for theft, and four years for conspiracy, to run concurrently.[5]

Upon appeal, Bogdanov asserted a number of errors, including error in the complicity instruction. The court of appeals, relying on *People v. Close*, 867 P.2d 82 (Colo.App.1993), held that the complicity instruction did not amount to plain error, and sustained the judgment of conviction. *See People v. Bogdanov*, No. 92CA1623, slip op. at 7–8 (Colo. App. Dec. 14, 1995) (not selected for official publication). We hold that a portion of the language in the instruction was in error in this case, but such error did not constitute a denial of due process to Bogdanov. We therefore affirm the court of appeals.

## II.

■ The questions raised by this case require us to review and clarify the state of mind required of an accomplice. Complicity is a theory of law by which an accomplice may be held criminally liable for a crime committed by another person if the accomplice aids, abets, or advises the principal, intending thereby to facilitate the commission of the crime. *See* § 18–1–603, 8B C.R.S. (1986); *People v. Wheeler*, 772 P.2d 101, 103

(Colo.1989); *see generally* 2 Wayne R. La-Fave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.7, at 136 (1986). Because the General Assembly has broad authority to define the conduct and culpable mental state for which someone may be held criminally liable, *see People v. Hill*, 934 P.2d 821, 829 (Colo.1997); *People v. Zinn*, 843 P.2d 1351, 1354 (Colo.1993), we begin our analysis with the Colorado complicity statute, which states:

> **Complicity.** A person is legally accountable as principal for the behavior of another constituting a criminal offense if, *with the intent to promote or facilitate the commission of the offense,* he aids, abets, or advises the other person in planning or committing the offense.

§ 18–1–603, 8B C.R.S. (1986) (emphasis added).

■ While "intent" is used in the Colorado complicity statute,[6] complicity itself does not thereby become a specific intent crime. Because complicity is not a substantive offense, *see Wheeler*, 772 P.2d at 103, the statutory definitions of *mens rea* contained in section 18–1–501(5), 8B C.R.S. (1986),[7] do not apply. *See People v. R.V.*, 635 P.2d 892, 894 (Colo. 1981). Rather, the term "intent" retains its common meaning. *See People v. Rodriguez*, 914 P.2d 230, 276 (Colo.1996); *Wheeler*, 772 P.2d at 103; *R.V.*, 635 P.2d at 894.

■ Although the statutory definition of intent under section 18–1–501 does not apply, there is nevertheless a dual mental state requirement of the complicitor that must be proven before he or she can be legally accountable for the offense of another. Complicity liability exists when (1) the complicitor has the culpable mental state required for the underlying crime committed by the principal; and (2) the complicitor assists or encourages the commission of the crime com-

---

5. The sentence had originally been for seven years for burglary, seven years for theft, and four years for conspiracy, but was later reduced following a Crim. P. 35(b) hearing.

6. Other state statutes use different language that specifies a *lesser* culpable mental state requirement, such as "acting *with knowledge* that another person is committing or intends to commit an offense, the person *knowingly* provides the other person with means or opportunity for the com-

mission of the offense." 1997 Ariz. Legis. Serv. Ch. 136, § 6 (amending Ariz.Rev.Stat. § 13–1004 (1989)) (emphasis added).

7. Section 18–1–501(5) defines "intentionally" and "with intent" as those terms are used in the "offenses" set forth in the Colorado Criminal Code, §§ 18–1–101 to –22–103, 8B C.R.S. (1986 & 1996 Supp.). *See* § 18–1–501(5); *see also Wheeler*, 772 P.2d at 103.

mitted by the principal "with the intent to promote or facilitate," § 18–1–603, such commission.[8] *See generally*, 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.7 (1986).

Complicity is not a theory of strict liability. It is not sufficient that the defendant intentionally engaged in acts which ultimately assisted or encouraged the principal. Rather, the complicitor must intend that his conduct have the effect of assisting or encouraging the principal in committing or planning the crime committed by the principal. *See generally, id.* As Learned Hand stated in *United States v. Peoni*, 100 F.2d 401 (2d Cir. 1938), the traditional definitions of accomplice liability

> have nothing whatever to do with the probability that the forbidden result would follow upon the accessory's conduct; . . . [the definitions] demand that [the complicitor] in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed.

*Id.* at 402.

Our holding in *People v. Wheeler*, 772 P.2d 101 (Colo.1989), which involved the crime of criminally negligent homicide, is not to the contrary. In *Wheeler*, we initially stated that the language from the complicity statute, "intent to promote or facilitate the commis-

sion of the offense," means the intent to promote or facilitate the act or conduct of the principal. *See id.* at 103–04. We continued by explaining that the "intent" language from the statute does not require that the complicitor intend for the principal to cause death; rather, it *"only requires knowledge by the complicitor that the principal is engaging in, or about to engage in, criminal conduct." Id.* (emphasis added).

■ The issue in *Wheeler* concerned reconciling the requirement that the complicitor "inten[d] to promote or facilitate the commission of the offense" with the definition of negligent homicide. *See id.* at 103. The principle we enunciated in *Wheeler* is that when a complicitor intentionally assists or encourages another whom the complicitor knows will thereby engage in conduct that grossly deviates from the standard of reasonable care and poses a substantial and unjustifiable risk of death to another, such a mental state should suffice for complicity liability for an underlying crime defined by the culpable mental states of recklessness or negligence. *See id.* at 105. Thus, the rule of *Wheeler* should only be applied to crimes defined in terms of recklessness or negligence, and should not be applied to dispense with the requirement that the complicitor have the requisite culpable mental state of the underlying crime with which he is charged.[9]

---

8. We note that some jurisdictions have complicity statutes that would hold an accomplice liable for any crimes that are a reasonably foreseeable consequence of the crime which the accomplice intended to aid or encourage. *See, e.g.,* Me.Rev. Stat. Ann. tit. 17–A, § 57 (West 1983). The Colorado General Assembly chose not to extend accomplice liability to reasonably foreseeable crimes, but rather limited such liability to those particular crimes which the accomplice intended to promote or facilitate. *See* § 18–1–603, 8B C.R.S. (1986).

9. We disapprove of that portion of *People v. Close*, 867 P.2d 82, 88–89 (Colo.App.1993), in which the court of appeals extended *Wheeler* to cases involving crimes with a culpable mental state of intentionally, with intent, knowingly, or willfully. In *Close*, the court of appeals interpreted *Wheeler* to mean that the statutory language "intent to promote or facilitate the commission of the offense," § 18–1–603, 8B C.R.S. (1986), " 'only requires knowledge by the complicitor that the principal is engaging in, or about to engage in, criminal conduct' and requires 'the

intent [of the complicitor] to aid the principal in the criminal act or conduct.' " *Id.* at 88–89 (quoting *Wheeler*, 772 P.2d at 103–04). The requisite *mens rea* of aggravated robbery is "knowingly." *See* § 18–4–302(1)(b), 8B C.R.S. (1986); *People v. Aragon*, 653 P.2d 715, 720 (Colo.1982). Thus, the rule of *Wheeler* does not apply when aggravated robbery is the underlying crime because it is not a crime of recklessness or negligence. We note that the court of appeals in *Close* did not rely on its interpretation of *Wheeler;* rather, the court continued by stating that the defendant must have "intended to aid, abet, advise, or encourage the other person in the commission or planning of the aggravated robbery." *Close*, 867 P.2d at 89. Thus, we disapprove only of the language in *Close* that extends *Wheeler* beyond cases involving crimes of negligence or recklessness.

For the same reasons, we also object to reliance on that portion of *Close* in the following two court of appeals decisions: *People v. Fisher*, 904 P.2d 1326, 1331 (Colo.App.1994); *People v. Green*, 884 P.2d 339, 344 (Colo.App.1994).

We conclude that the language of the Colorado complicity statute sets forth a dual mental state requirement for the complicitor. First, the complicitor must have the culpable mental state required for the underlying crime committed by the principal. Second, the complicitor must intend that his own conduct promote or facilitate the commission of the crime committed by the principal.

### III.

In this case, the trial court gave the jury the pattern complicity instruction, which states:

> A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:
>
> 1. A crime must have been committed.
>
> 2. Another person must have committed all or part of the crime.
>
> 3. The defendant must have had knowledge that the other person intended to commit (*all or part of*) the crime.
>
> 4. *The defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime.*

CJI-Crim. 6:04 (1983) (emphasis added).

■ Bogdanov argues that the pattern jury instruction on complicity violated his right to due process of law. Under both the United States and Colorado Constitutions, the due process clauses require that in order to convict a defendant, the prosecution must prove every fact necessary to constitute the charged offense beyond a reasonable doubt. *See* U.S. Const. amend XIV; Colo. Const. art. II, § 25; *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970); *People v. R.V.*, 635 P.2d 892, 893 (Colo.1981). Therefore, the trial court must properly instruct the jury on every element of the substantive offense with which the defendant is charged so the jury may determine whether all the elements have been established beyond a reasonable doubt. *See R.V.*, 635 P.2d at 894.

Bogdanov's argument is twofold. First, he maintains that the instruction fails to proper-

ly instruct the jury on the statutory element of "intent to promote or facilitate the commission of the offense...." § 18–1–603, 8B C.R.S. (1986). Second, he contends that the language in the third paragraph of the instruction, "[t]he defendant must have had knowledge that the other person intended to commit (all or part of) the crime," allows the jury to convict even if the defendant did not know the other person or persons intended to commit the crime, but rather only knew the other person or persons intended to commit part of the crime. Both of Bogdanov's asserted instructional deficiencies concern the complicitor's dual mental state requirements.

### A.

Bogdanov contends that the asserted errors were structural. Therefore, our inquiry begins with an objective determination of whether Bogdanov's alleged errors in the complicity instruction amount to structural defects. Such analysis in this case is confined to whether the jury instructions, when read in their entirety and considered as a whole, properly instructed the jury on all essential elements necessary to reach its verdict. We conclude that the asserted deficiencies in the pattern complicity instruction are not structural.

■ There are two categories of constitutional violations that may occur during the course of a criminal proceeding: "trial errors" and "structural errors." *See Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 2082–83, 124 L.Ed.2d 182 (1993); *see also* 508 U.S. at 282, 113 S.Ct. at 2083 (Rehnquist, C.J., concurring); *Arizona v. Fulminante*, 499 U.S. 279, 307–09, 111 S.Ct. 1246, 1263–65, 113 L.Ed.2d 302 (1991). Trial errors occur "during the presentation of the case to the jury, and ... may therefore be quantitatively assessed in the context of other evidence presented...." *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. at 1263–64. Trial errors are compatible with both harmless error, *see id.*, and plain error analyses.

■ Structural errors are not amenable to either a harmless or a plain error analysis because such errors affect "the framework

within which the trial proceeds," and are not errors in the trial process itself. *Id.* at 310, 111 S.Ct. at 1265; *Sullivan,* 508 U.S. at 281–82, 113 S.Ct. at 2082–83. A structural error may not be assessed in the context of the evidence presented. Rather, the consequences of a structural defect are necessarily unquantifiable and indeterminate, thus rendering the entire trial fundamentally unfair and warranting automatic reversal. *See Sullivan,* 508 U.S. at 281–82, 113 S.Ct. at 2082–83.

The United States Supreme Court provided as examples of structural defects cases involving a total deprivation of the right to counsel at trial, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), or the presence on the bench of a judge who is not impartial, *see Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). *See Fulminante,* 499 U.S. at 309–10, 111 S.Ct. at 1264–65. Such errors affect the entire conduct of the trial from beginning to end, *see Fulminante,* 499 U.S. at 309–10, 111 S.Ct. at 1264–65, or deny the defendant a basic protection, the precise effects of which are immeasurable, *see Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082–83.

■■■■ A criminal defendant has the right to a jury verdict beyond a reasonable doubt. *See* U.S. Const. amends. V, VI; *Sullivan,* 508 U.S. at 278, 113 S.Ct. at 2080–81; *People v. Hill,* 934 P.2d 821, 827 (Colo.1997). Therefore, jury instructions that do not apprise the jury of all essential elements of the crimes of which the defendant was convicted, and that would permit the jury to arrive at a guilty verdict without determining each essential element beyond a reasonable doubt, create a structural defect affecting the framework within which the trial proceeds. *See Sullivan,* 508 U.S. at 279–82, 113 S.Ct. at 2081–83; *People v. Vance,* 933 P.2d 576, 580 (Colo.1997).

In *Sullivan,* the Court concluded that a constitutionally deficient burden of proof instruction necessarily vitiated all the jury's findings and was a structural error because it forced the reviewing court to engage in speculation about what a reasonable jury would have done. *Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082–83. Such an error in essence violated the defendant's right to a jury verdict of guilt beyond a reasonable doubt, the consequences of which were necessarily unquantifiable and indeterminate, thus rendering the trial fundamentally unfair. *See id.* at 281–82, 113 S.Ct. at 2082–83.

■■■ We recently applied the structural error analysis in *People v. Vance,* 933 P.2d 576 (Colo.1997). In *Vance,* we held that the trial court's failure to submit materiality as an element of perjury to the jury for determination was a structural error. When the jury is misinstructed on an essential element of the crime, so as to completely undermine the jury's verdict, the error necessarily gives rise to a structural defect in the trial requiring reversal. *See id.* at 580–81. Thus, the question in a structural defect analysis is "not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials." *Carella v. California,* 491 U.S. 263, 269, 109 S.Ct. 2419, 2422, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring).

■■■ The Supreme Court has clarified that not all errors in jury instructions rise to the level of structural error that would automatically require a reversal. *Cf. Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (error in instruction which impermissibly shifted burden of proof on malice was not "so basic to a fair trial" that such error could never be harmless; since jury was instructed to presume malice from predicate facts, jury necessarily had to find existence of those facts beyond a reasonable doubt). There is a strong presumption that any errors that may have occurred are not structural, but rather are subject to a harmless or plain error analysis under which errors may be resolved in light of the entire record. *See id.* at 578–79, 106 S.Ct. at 3106–07.

■■■ We hold that Bogdanov's asserted errors are not structural because the plain language of the pattern complicity instruction sufficiently reflects the complicitor's two mental state requirements under the complicity statute: (1) the defendant had the requisite *mens rea* for the underlying crime

committed by the principal; and (2) the defendant intended that his own conduct would promote or facilitate the commission of the crime committed by the principal. Therefore, the jury necessarily made a determination as to Bogdanov's mental state, and no structural error occurred.

Specifically, the first paragraph of the instruction initially directs the jury to find that "a crime" must have been committed, thus instructing that all elements of that crime with which the defendant is charged must be established beyond a reasonable doubt. Thereafter, "the crime" as used throughout the remaining paragraphs of the instruction refers back to the crime that was referenced in the first paragraph. *See Close,* 867 P.2d at 89. The third paragraph then instructs that the defendant "must have had knowledge that the other person intended to commit (all or part of) the crime." This paragraph instructs the jury that the complicitor must have known that the principal intended to commit "the crime" referenced in the first paragraph.

The fourth paragraph then instructs the jury on the complicitor's requisite mental state. That paragraph directs that to be convicted as a complicitor, the defendant must intentionally aid, abet, advise, or encourage the principal in the commission or planning of the crime as defined in the first paragraph. We conclude that the language adequately directs the jury to determine whether the defendant had the requisite *mens rea* of the crime, because the defendant could not have *intended* his participation to further the crime unless he also intended the

crime to occur. For him to intend that the crime occur, he would necessarily share the principal's mental state. If the defendant did not intend that his actions would assist or encourage the other principal(s) in the commission or planning of the underlying crime, the defendant cannot be criminally liable for the commission of that crime. *See People v. Rodriguez,* 914 P.2d 230, 276 (Colo.1996) (pattern complicity instruction adequately advised the jury of the requisite *mens rea* ); *see also Close,* 867 P.2d at 89.

Hence, the instruction satisfies both aspects of the test: (1) the defendant had formed the *mens rea* requisite to the underlying crime; and (2) he committed an act *intending* thereby to further the crime. Criminal responsibility is a complex concept, to which whole books and years of course work are devoted. In the end, the question is whether the jury receives adequate instruction on the elements of any particular crime. As to the complicity instruction, we here determine that the elements necessary to establish complicity liability are set out in terms that direct the jury to the appropriate and necessary inquiries. Thus, despite the omission of the statutory language "with the intent to promote or facilitate the commission of the offense" from section 18-1-603, the complicity instruction does not create a structural defect.[10]

We find that the plain language of the entire instruction does not allow the defendant to be convicted of a crime under a complicity theory for which he did not have the requisite mental state. We therefore

---

10. While we have concluded that the standard complicity instruction *does not amount to structural error that would affect the entire trial from beginning to end or that would deny the defendant a basic protection, we nevertheless acknowledge that the pattern instruction should more properly mirror the applicable statutory language as follows (changes are highlighted):*

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be *established beyond a reasonable doubt:*
 1.  A crime must have been committed.
 2.  Another person must have committed [ all or part of] the crime.
 3.  The defendant must have had knowledge that the other person intended to commit [ all or part of] the crime.

**4.  The defendant must have had the intent to promote or facilitate the commission of the crime.**
**5.  The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.**

The language contained in brackets should be included in the complicity jury instruction only in those cases where one or more persons, possibly including the defendant, together committed the essential elements of the underlying crime. *See* discussion *infra* Part III.B. If only one person alone committed all essential elements of the crime with which the defendant is charged under a complicity theory, the language in brackets should be omitted from the jury instruction as given.

hold that the standard complicity instruction does not create a structural defect.

### B.

While we find that the complicity instruction, when considered in its entirety, does not create a structural defect, we nonetheless find that the "all or part of" language was superfluous in this case and therefore in error. In *People v. Rodriguez,* 914 P.2d 230 (Colo.1996), we stated that the "all or part of" language was "erroneous." 914 P.2d at 276. However, we ultimately held in *Rodriguez* that the error in that case was harmless. *See id.* Similarly, we now conclude that the inclusion of such language in this case was error, but did not amount to plain error.

Here, Bogdanov did not object to the pattern instruction on complicity either during the trial or in his motion for a new trial, other than objecting to the word "abet," which is not at issue here. Therefore, we must consider the validity of the instructions under a plain error analysis. *See* Crim. P. 52(b) (permitting review of plain errors or defects affecting substantial rights not brought to the attention of the court); *Wilson v. People,* 743 P.2d 415, 419 (Colo.1987).

Each case involving a plain error analysis must be resolved in light of its particular facts and the law that applies to those facts. *See Ramirez v. People,* 682 P.2d 1181, 1183 (Colo.1984). Plain error occurs when, after a review of the entire record, the appellate court can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See Wilson,* 743 P.2d at 420; *see also Walker v. People,* 932 P.2d 303, 311 (Colo. 1997); *People v. Kruse,* 839 P.2d 1, 3 (Colo. 1992); *People v. Larson,* 782 P.2d 840, 843 (Colo.App.1989) (applying plain error analysis in context of instructional error). Such inquiry necessarily requires a careful subjective review of the evidence presented to the jury. *See People v. Rubanowitz,* 688 P.2d 231, 240 (Colo.1984).

We have previously found that jury instructions that do not undermine the funda-

mental fairness of the trial so as to cast serious doubt on the reliability of the judgment of conviction withstand scrutiny. *See, e.g., id.* at 239–40 (failure to define "may" as used in child abuse statute not plain error in light of overwhelming evidence of defendant's guilt; error could not be said to have reasonably contributed to defendant's conviction); *People v. Mattas,* 645 P.2d 254 (Colo. 1982) (failure to include mental state in elemental instruction was not fatally defective error because instructions, when read and considered as a whole, instructed jury on required *mens rea* element); *People v. Eades,* 187 Colo. 74, 77, 528 P.2d 382, 384 (1974) (failure to instruct jury on circumstantial evidence not plain error because defendant's substantial rights were not affected); *People v. Major,* 179 Colo. 204, 206, 499 P.2d 1200, 1201 (1972) (failure to instruct jury as to definition of theft not plain error where jury was instructed that defendant was charged with unlawfully and feloniously breaking and entering a motor vehicle "with intent then and there to commit the crime of theft therein" because defect did not affect defendant's substantial rights).

Failure to instruct the jury properly does not constitute plain error where the subject of the error in the instruction is not contested at trial, or where evidence of the defendant's guilt is overwhelming. *See People v. Fichtner,* 869 P.2d 539, 543–45 (Colo. 1994) (failure to instruct jury on definition of "serious bodily injury" not plain error because issue of degree of bodily injury that victim feared from defendant not contested at trial and because evidence of defendant's guilt was overwhelming); *People v. Cowden,* 735 P.2d 199, 202 (Colo.1987) (erroneous omission of element of value of stolen property in jury instructions not plain error where evidence presented concerning value was not contested); *see also People v. Quintana,* 701 P.2d 1264, 1266 (Colo.App.1985) (improper instructions on culpable mental states of "knowingly" and "intentionally" not plain error where defendant's mental state was not an issue at trial).

Thus, under a plain error analysis, unlike a structural error analysis, the defendant must demonstrate not only that the

instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to the defendant's conviction. *See Rubanowitz*, 688 P.2d at 239.

■ Bogdanov was convicted as an accomplice, and the third woman alone actually committed the essential elements of the underlying crimes of burglary and theft. The evidence established that no other persons entered the office or stole the money and checks. We distinguish the fact pattern of this case where the accomplice is not charged with committing any act essential to the elements of the underlying crime, from the fact pattern wherein the principal and at least one other person, possibly the defendant, together commit the essential elements of the crime. It is this latter situation to which the "all or part of" language applies.

*Reed v. People*, 171 Colo. 421, 467 P.2d 809 (1970), presents an example of a situation where two or more persons together committed the underlying crime. In *Reed*, the defendant and one other person together robbed the victim. Each principal committed one element of the crime of robbery: the defendant assaulted the victim with a knife while the other person took the money. Thus, neither person committed the entire crime of robbery, the elements of which at the time of *Reed* were (1) the taking of money, goods, or other valuable thing from the person of another (2) by the use of violence. *See* 1963 C.R.S. § 40-5-1. The defendant committed the second element, and the other person committed the first. Their actions together constituted the crime of robbery. Therefore, the "all or part of" language in the standard complicity instruction would apply to that situation. *See Reed*, 171 Colo. at 428, 467 P.2d at 812 ("Where two or more are involved in the commission of a criminal offense and one helps the other, though not actually performing all the acts necessary to the commission of the offense, all are, nevertheless, principal offenders and are punishable as though all have committed the necessary acts."); *People v. Fisher*, 904 P.2d 1326, 1331 (Colo.App.1994) ("Under a complicity theory, although all of the elements of a crime must have been committed,

it is not necessary that any single person have done so. It is only necessary that the acts of the complicitor and the other actor or actors, together, constitute all acts necessary to complete the offense."); *People v. Close*, 867 P.2d 82, 89 (Colo.App.1993) (same).

■ However, in instances such as the present case, where the defendant being charged with the underlying crime under a complicity theory did not actually commit any of the essential elements of that crime and where one principal alone committed all elements of the crime, we see no need for the jury instruction on complicity to contain the "all or part of" language. Here, the prosecution charged that one person alone committed all essential elements of both the crimes of burglary and theft. We therefore conclude that it was error to include the "all or part of" language in the pattern complicity instruction.

While the inclusion of such language was error, we conclude that such language was merely superfluous in this case, and therefore not plain error. The jury here necessarily found, first, that Bogdanov knew the third woman intended to enter the store office and commit burglary and theft therein, as the third paragraph of the instruction required such a finding before the jury could reach a guilty verdict. Moreover, according to the fourth paragraph, the jury also found that Bogdanov had the requisite mental states for the underlying crimes of which he was convicted in order to have found him guilty under a complicity theory. The act of holding up a pair of pants without the mental state to aid in the commission of theft and burglary is certainly not criminal in nature. Rather, the instruction required the jury to conclude that Bogdanov knew the third woman intended to enter the store office and commit burglary and theft, and that Bogdanov intended his actions to aid and encourage her in the commission of those crimes in order to convict him of burglary and theft under a complicity theory. Had the jury not found that Bogdanov had the requisite mental state, it would have found Bogdanov innocent of the charges against him.

We therefore hold that the "all or part of" language in the standard complicity instruc-

tion was error in this particular case, but that no plain error occurred, and Bogdanov's right to due process was not violated.

### IV.

We conclude that the pattern complicity instruction, CJI–Crim. 6:04 (1983), did not violate Bogdanov's right to due process, and therefore affirm the court of appeals in sustaining Bogdanov's judgment of conviction.