Justice KOURLIS
delivered the Opinion of the Court.
Defendant, Samuel W. Cooper, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of second degree burglary under section 18-4-203, 6 C.R.S. (1998). The statute defines the offense of second degree burglary as an unlawful entry or unlawful presence in an occupied building coupled with the intent to commit some other crime on the premises (the “ulterior offense”). We granted certio-rari to consider whether the trial court erred in instructing the jury that it could convict Cooper if it found that he had formed the intent to commit the underlying offense after his unlawful entry into the premises in question. The court of appeals found no error. See People v. Cooper, 950 P.2d 620 (Colo.App.1997).
We now hold that, under section 18-4-203 and our precedent, burglary punishes the defendant who trespasses with the intent to do more harm once on the premises. Thus, to convict a defendant of burglary, a jury must conclude that the defendant had made up his mind to commit some other offense at the point at which he or she becomes a trespasser. If the defendant forms the intent to commit the crime after the trespass is under way, he or she may be guilty of that underlying crime (or attempt) and of trespass - but is not guilty of burglary. Both circumstances reflect criminal acts, but burglary is the more serious. Burglary is the crime that requires that the defendant have a criminal intent to do more than trespass. To hold otherwise would convert burglary into a sentence enhancer for any crime committed in tandem with a trespass. Although the General Assembly could so provide, we find no indication in the statute or legislative history to indicate that such was their intent. Hence, we reverse the decision of the court of appeals.
I.
In February 1995, Cooper and his seven-year-old daughter were living with Cooper’s sixty-eight-year-old mother, Shirley Thor-man. Cooper had borrowed money from his mother, and the two argued frequently about financial matters. On February 26, 1995, following one such argument, the police arrested Cooper for harassment of his mother. Two days later, the police released Cooper from custody subject to a temporary restraining order that prohibited him from contacting his mother or going to her home.
The following day, on March 1, 1995, defendant went to Thorman’s home and entered through the rear door. Thorman and Cooper gave conflicting testimony at trial concerning the nature of this visit. Thorman testified that her son broke in uninvited and unannounced, immediately cursed her and threatened her life, and then threw her onto a bed and repeatedly “twisted” her legs and arms. She further testified that her son beat her over the head with two decorator pillows until they began to tear. Cooper testified that his mother had invited him to the house, and that he broke through the door in order to escape the cold when his mother failed to answer his knocks. He further testified that upon his entry, he argued with Thorman about financial matters. He admitted that he became angry in the course of this discussion, and pulled a light fixture out of the ceiling, but claimed that he never physically contacted his mother. Hence, the evidence was unclear as to whether Cooper had formed an intent to commit the ulterior of *1237 fense of assaulting his mother when he entered her home.
The trial court instructed the jury that it could find Cooper guilty of second degree burglary if it found that Cooper knowingly and unlawfully entered the home with the intent to commit therein the crime of assault. Over defense objection, the trial court further instructed that “the intent to so commit a crime ... can be formed either before entry into the dwelling or after entry into the dwelling.” The jury convicted Cooper of second degree burglary and assault on the elderly, and Cooper appealed, arguing that the burglary instructions were improper.
II.
The second degree burglary statute, section 18-4-203(1), 6 C.R.S. (1998) provides: “A person commits second degree burglary if he knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against person or property.”[1] The General Assembly inserted the language “remains unlawfully” when it repealed and reenacted the statute in 1971. See Ch. 121, sec. 1, § 4-4-203, 1971 Colo. Sess. Laws 427. Cooper argued on appeal that because the trial court never instructed the jury that the defendant could be convicted under the unlawfully remains theory, it was improper for that court to instruct that his intent to assault Thorman could be formed after his entry. In overruling Cooper’s similar objection at trial, the trial court indicated that there seemed to be “no evidence to suggest that Mr. Cooper lawfully entered, and was asked to leave, and remained unlawfully.”[2] On that basis, the trial court declined to include the remaining unlawfully instruction, but nonetheless did include the instruction concerning the timing of the formation of intent.
Citing People v. Angell, 917 P.2d 312 (Colo. App.1995), and People v. Trujillo, 749 P.2d 441 (Colo.App.1987), the court of appeals concluded that the 1971 amendment supported the trial court’s jury instruction. The court of appeals in Angelí and Trujillo held that “a person can be found guilty of second degree burglary if the intent to commit a further crime is formed after entry, but while the person is remaining unlawfully upon the premises.” Trujillo, 749 P.2d at 442; see also Angell, 917 P.2d at 314. Based on these holdings, the court of appeals found no error in the trial court’s jury instructions.
III.
We begin our analysis of this case by exploring the origins of our modern burglary statute. Under the common law, burglary required the convergence of four elements: time, place, manner, and intent. 4 William Blackstone, Commentaries 283 (Hammond ed. 1890). The law punished “he that by night breaketh and entereth into a mansion-house, with intent to commit a felony.” Id.
This formulation of burglary responded to two deficiencies in the early law of attempt. First, under the common law, attempt required a person to engage in a final act that would have accomplished the crime but for circumstances beyond that person’s control. See Model Penal Code § 221.1, emt. at 63 (1980). The development of burglary allowed the law to intercede in a prospective felon’s conduct at an earlier point in time, combating what was viewed to be “a very heinous offense: not only because of the abundant terror that it naturally carries with it, but also as it is a forcible invasion and disturbance of [the] right of habitation.” 4 Blackstone, Commentaries 282. Second, attempt afforded disproportionately light penalties in comparison to those for the completed offense. Thus, the offense of burglary evolved to provide more severe punishment for a particu *1238 larly terrifying form of inchoate offense. See Model Penal Code 221.1, cmt. at 63; 4 Blackstone, supra, at 281.
Hence, the specific purpose of burglary was to deter trespass against habitations by persons who intended to commit a felony therein. Trespass into a home coupled with the intent to steal from or assault the resident was viewed as egregious and dangerous. However, unless a person possessed the intent to commit a felony at the moment he broke and entered a dwelling, such a trespass was punishable only as mere civil trespass:
Under the common law and by virtue of statutory provisions in many jurisdictions, a criminal intent to steal or commit some felony ... at the time of breaking and entering is an essential element of the crime of burglary. The breaking and entry would, in the absence of such intent, be a bare trespass, which, however aggravated, would not be a crime.
13 Am.Jur.2d Burglary § 24 (1964); see also 4 Blackstone, supra, at 288 (“As to the intent; it is clear that such breaking and entry must be with a felonious intent, otherwise it is only a trespass.”).
Modern burglary statutes have expanded the offense to cover a broader range of situations in which people might be terrorized by trespassers with criminal designs. Unlike the common law, Colorado statutes have never limited burglary trespasses to those committed against a dwelling. From 1861 until 1971, burglary included trespasses against an enumerated list of structures, such as churches, saloons, and railroad cars. See Territorial Laws of Colorado, First Sess., An Act Concerning Criminal Jurisprudence, Division V, § 54, at 299 (1861) (codified as amended through 1971 at § 40-3-5, 3 C.R.S. (1963)). In 1971, the General Assembly broadened the offense to include entries into any “building or occupied structure.” See § 40-4-202 to -204, 12 C.R.S. (1971 Supp.).
As to the manner of trespass, our statute has always encompassed unlawful entry achieved in either of two manners: (1) a traditional common law breaking and entry or; (2) an unlawful, nonforced entry. See, e.g., Colo.Crim.Code, Ch. 36, § 1227 (1891) (codified as amended at 18-4-201 to -204, 6 C.R.S. (1998).
In 1971, however, the General Assembly added a third manner of trespass, when it reenacted the burglary statute to apply to suspects who entered or “remain[ed] unlawfully” in a structure. See Ch. 121, sec. 1, § 4-4-203, 1971 Colo. Sess. Laws 427. For purposes of burglary and criminal trespass, the General Assembly defined “unlawfully enters or remains” in pertinent part as:
A person “unlawfully enters or remains” in or upon premises when he is not licensed, invited, or otherwise privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of the premises or some other authorized person.
See Ch. 121, sec. 1, § 4-4-201(3), 1971 Colo. Sess. Laws 426; § 18-4-201, 6 C.R.S. (1998). The General Assembly commented that “[t]his section contains definitions of terms applicable to burglary, derived from Michigan proposal sections 2601, 2605, 2606, and 2607 which in turn are copied without material change from New York Code section 145.00 et seq. (See also Model Penal Code 221.0 to 221.3.)” 1971 Perm. Supp., § 40-4-201 cmt. at 306.[3] The scope and nature of *1239 the “remains unlawfully” clause lie at the heart of the present case.
IV.
Two fundamental questions arise in this context: (1) when must the defendant form the intent to commit an ulterior crime; and (2) what does “remains unlawfully” mean: specifically, does it refer only to someone who enters lawfully and thereafter remains unlawfully, or does it also include someone who enters unlawfully, thereafter automatically remaining unlawfully for the duration of his presence in the structure.
A.
First, we address the fundamental question of when criminal intent must be formed for purposes of burglary under section 18-4-203. We are guided in this inquiry by basic principles of statutory interpretation. In construing a statute, we give effect to the intent of the General Assembly whenever possible. The statute should be construed as a whole, giving consistent, harmonious, and sensible effect to all of its parts. See City of Grand Junction v. Sisneros, 957 P.2d 1026, 1028 (Colo.1998); Walgreen v. Charnes, 819 P.2d 1039, 1044 (Colo.1991). We presume that the General Assembly was familiar with our previous interpretations of statutes and with the common law when it enacted the statute in question. See People v. Leske, 957 P.2d 1030, 1037 (Colo.1998); Vaughan v. McMinn, 945 P.2d 404, 409 (Colo.1997) (“The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area.”); Tompkins v. DeLeon, 197 Colo. 569, 571, 595 P.2d 242, 243-44 (1979) (“When the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with judicial construction of the statute.”); Robinson v. Kerr, 144 Colo. 48, 52, 355 P.2d 117, 120 (1960) (quoting In re Reynolds’ Guardianship, 60 Cal. App.2d 669, 141 P.2d 498, 500 (Cal.App.1943) for rule that “[statutes are not presumed to alter the common law otherwise than the act expressly provides”). In fact, although the General Assembly abolished common law crimes not described by the 1971 reenacted Colorado Criminal Code, it took care to note that this abolition did not “affect the use of ease law as an interpretative aid in the construction of the provisions of this code.” 1971 Peral. Supp. § 40-1-401.
As such, we look to long-settled judicial precedent to guide our inquiry into the mens rea element of burglary. This court has always required proof that a burglary defendant had the intent to commit a crime at the time of trespass. See Martinez v. People, 163 Colo. 503, 506, 431 P.2d 765, 766 (1967) (“One of the essential elements in a charge of burglary ... is that the accused have the intent to commit a specific crime at the very time and place of breaking and entering.”); see also Gomez v. People, 162 Colo. 77, 80, 424 P.2d 387, 389 (1967); Macias v. People, 161 Colo. 233, 235, 421 P.2d 116, 118 (1966); People v. Mellor, 2 Colo. 705, 708 (Colo.1875) (holding defective an affidavit that failed to specify the elements of burglary, including entry with intent to commit a felony). This construction derived from the ancient common law and from settled burglary law in other jurisdictions, and it ensured that the serious penalties for burglary were reserved for trespasses accompanied by the intent to commit another crime.
We presume that the General Assembly was aware of this well-established area of Colorado burglary law when it enacted the 1971 version of the statute. Thus, we do not ascribe to the General Assembly the intent to alter the mens rea element of burglary, absent express wording to that effect. We note that the General Assembly did not attempt to draw a distinction in the statute between the intent required for any of the three types of unlawful trespass: breaking and entering, unlawful entering, or unlawful remaining. The statute merely references all three together, indicating that second degree burglary results when one of the three forms of trespass is undertaken in a designated structure “with intent to commit therein a crime.” *1240 § 18-4-203(1). We therefore presume that the General Assembly intended us to apply the same rule regarding the timing of formation of intent to commit an ulterior crime that we had applied during the century preceding the 1971 reenactment. Hence, we hold that the intent to commit a crime must co-exist with the moment of trespass, regardless of the manner of trespass.
Our analysis is consistent with the New York courts’ interpretation of that state’s similar burglary statute. In 1965, New York revised its definition of the offense of burglary to include as a putative defendant someone who “knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” 1965 N.Y. Laws 2399; see also N.Y. Penal Law § 140.20, -.25, -.30 (McKinney 1988). New York’s highest court rejected a claim that a burglary conviction would be proper as long as the prosecution proved that the defendant committed a crime while unlawfully remaining on the premises. See People v. Gaines, 74 N.Y.2d 358, 547 N.Y.S.2d 620, 546 N.E.2d 913, 915 (N.Y. 1989). It concluded that, “[b]y the words ‘remain unlawfully,’ the Legislature sought to broaden the definition of criminal trespass, not to eliminate the requirement that the act constituting criminal trespass be accompanied by contemporaneous intent to commit a crime.” Id.
Consistent with the New York court’s reading of its statute, we ■ read the plain language of the Colorado burglary statute to require that regardless of the manner of trespass, a conviction for burglary requires proof that the defendant intended to commit a crime inside at the moment he first became a trespasser.
B.
Having determined that the intent to commit a crime must coexist with the initial point of unlawful entry or remaining, we turn to the related question of when a person’s presence in a structure is an unlawful remaining. The People argue that the plain language of the statute supports the notion that a person automatically unlawfully remains after unlawfully entering the premises of another. We find that a logical reading of the statute as a whole, taken together with its comments, does not support this position.
The General Assembly’s reference to New York’s burglary statute in the comments to our statute is helpful in determining the proper scope of the unlawfully remaining clause. See Hoen v. District Court, 159 Colo. 451, 457, 412 P.2d 428, 431 (1966) (holding that where the General Assembly substantially adopts another state’s statute, it presumably intends the courts of this state to accord the statute the same construction given it by the courts of the other state prior to its adoption in Colorado). Here, the lengthy definition of “enter or remain unlawfully” enacted by our General Assembly in 1971 was nearly identical to New York’s 1967 definition of the same. Cf. N.Y. Penal Law § 140.00 (McKinney 1967) with Ch. 121, sec. 1, § 4-4-201(3), 1971 Colo. Sess. Laws 426 (codified as amended at § 18-4-201, 6 C.R.S. (1998)).
As such, the development of New York law prior to the enactment of our statute supports the notion that the General Assembly intended the unlawfully remaining clause to remedy situations in which a defendant entered a premise lawfully, but subsequently remained with the intent to commit a crime when his presence ceased being lawful. See People v. Licata, 28 N.Y.2d 113, 320 N.Y.S.2d 53, 268 N.E.2d 787, 789 (N.Y.1971). The Licata court held that the New York General Assembly designed the definition of unlawfully remaining, applicable both to burglary and to criminal trespass,[4] to cover situations in which a person enters lawfully but subsequently remains unlawfully. Indeed, the *1241 court in Licata cited the Practice Commentary associated with the statutory definition. Id. at 341-42. The Practice Commentary, published four years before the enactment of our modern burglary statute, is an integral part of the McKinney’s volume containing the 1967 New York Revised Penal Code cited by the Colorado General Assembly in its comments to section 18-4-203.[5] The Commentary stated that the “enter or remains unlawfully” provision
is referable to employees who enter then-place of employment, invited guests and all other persons who have an express or implied license or privilege to enter or remain in or upon premises.... The %vord ‘remain’ in the phrase ‘enter or remain’ is designed to be applicable to cases in which a person enters with ‘license or privilege’ but remains on the premises after the termination of such license or privilege. Thus a person who enters a department store during regular business hours and secretes himself in a public washroom until after the store is closed, “remains unlawfully” within the meaning of [the New York statute].
There was some doubt as to whether the word “intrude” as used in former Penal Law § 2036 included “remaining” upon the premises after having been ordered lawfully to vacate. The Revised Penal Law is designed to make clear that a criminal trespass or a burglary may arise from an “unlawful remaining” as well as the more common “unlawful entering.”
Practice Commentary, N.Y. Penal Law § 140.00 (McKinney 1967) (emphasis added).
We find that the purpose of the General Assembly in amending the burglary statute to include remaining unlawfully was to address situations in which the defendant lawfully entered a premise, but subsequently remained after his presence was no longer lawful. It was not, as the People contend, to transform every unlawful entry immediately into an unlawful remaining, during which a person could be convicted of burglary if he or she formed the intent to commit a crime at any time.
Such a rule would be inconsistent with the General Assembly’s decision to enumerate three different means of achieving a trespass, because every unlawful entry would simultaneously become an unlawful remaining unless a defendant instantly left the premises. Such a rule would run contrary to the plain language of the statute by effectively nullifying the import of the first two means of achieving entry, and thus would fail to construe the statute as a whole, giving “consistent, harmonious, and sensible effect to all of its parts.” City of Grand Junction, 957 P.2d at 1028. Finally, such a rule would be inconsistent -with the legislative comments to the statute and with prior burglary law precedent in this state.
We hold that to convict a defendant under section 18-4-203, 6 C.R.S. (1998), a jury must find that the defendant either: (1) broke and entered or unlawfully entered with the intent to commit a crime therein; or (2) entered lawfully but subsequently remained unlawfully with the intent to commit a crime therein.
C.
In summary, we view the 1971 revision of the statute as representing part of a gradual development of the statute, rather than a major shift away from previous policy and precedent. Were we to accept the People’s argument that an unlawful remaining automatically occurs after an unlawful entry and that the intent to commit a crime may be formed at any point during a continuum of unlawful remaining, we would transform the burglary statute into a strict liability punishment enhancer for anyone who intentionally commits a crime after unlawfully entering or remaining in a building or occupied structure. Certainly, the General Assembly could do that, but we do not view the mere inclusion of “remains unlawfully” as achieving or intending that result.
Under such an interpretation, the serious penalties of the burglary statute would apply, for example, to a homeless person who breaks into a building merely to sleep, spends the night, and upon waking decides to *1242 steal a blanket found inside. Such a result would not comport with the long-standing purposes behind the crime of burglary, because the defendant’s decision to commit the trespass would not be accompanied by the contemporaneous intent to commit a crime.
In this sense, the People’s interpretation of section 18^4-302 would disassociate the burglary mens rea element from a specific decision on the part of the defendant to pursue a prohibited course of conduct. Such a result would run counter to a fundamental premise of Anglo-American criminal law “that the physical conduct and state of mind must concur”; that is, that the defendant’s mental state must “actuate” the proscribed physical conduct. 1 Wayne R. Lafave & Austin W. Scott, Jr., Substantive Criminal Law § 3.11(a) (1986).
To the extent that our decision today conflicts with the court of appeals’ holdings in Angelí and Trujillo, we now disapprove of those decisions. In both of those cases, a defendant was convicted under an unlawfully remaining theory after unlawful entry, and in both cases the trial court instructed the jury that the defendant could form the necessary intent at any time while unlawfully remaining.
V.
In light of these conclusions, we now hold that the trial court improperly instructed the jury that Cooper’s intent to commit a crime could “be formed either before entry into the dwelling or after entry into the dwelling.” Cooper argues that this erroneous instruction violated his constitutional right to due process, and that this court should therefore reverse his conviction.
Due process under both the state and federal constitutions requires that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the charged offense. See U.S. Const. amend. XIV; Colo. Const. art. II, § 25; In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Bogdanov v. People, 941 P.2d 247, 252 (Colo.1997). Thus, the trial court must properly instruct the jury on every essential element of the charged offense. See People v. R.V., 635 P.2d 892, 894 (Colo.1981). Jury instruction errors, like other criminal procedure errors, fall into two categories: trial errors and structural errors.
Trial errors occur “during the presentation of the case to the jury” and do not require reversal to comport with due process, but rather may be assessed under either harmless or plain error analysis. See Arizona v. Fulminante, 499 U.S. 279, 307-308, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Bogdanov, 941 P.2d at 252. Structural errors, on the other hand, are “not amenable to either a harmless or a plain error analysis because such errors affect ‘the framework within which the trial proceeds,’ and are not eiTors in the trial process itself.” Bogdanov, 941 P.2d at 253 (quoting Fulminante, 499 U.S. at 310, 111 S.Ct. 1246). A structural error may not be assessed in the context of the evidence presented, for its consequences are “necessarily unquantifiable and indeterminate.” Bogdanov, 941 P.2d at 253. Such an error renders “the entire trial fundamentally unfair and warrant[s] automatic reversal.” Id. at 253.
In the context of jury instructions, a structural error occurs when the instructions fail to inform the jury of all the essential elements of the crime with which the defendant is charged. See id. “The question in a structural defect analysis is ‘not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials.” Carella v. California, 491 U.S. 263, 269, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989).
There is a strong presumption that procedural errors are not structural, but are instead trial errors. “Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis.” Rose v. Clark, 478 U.S. 570, 578-79, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). This presumption extends to errors involving jury instructions. See Bogdanov, 941 P.2d at 253. As such, courts should normally evaluate jury instruction errors under Crim. P. 30 *1243 in light of the entire record using harmless or plain error analysis.
Structural error analysis applies only where, as here, the error in the jury instruction omits an essential element of an offense or otherwise renders the defendant’s trial fundamentally unfair. See id. Because the error in this case went to the fundamental elements of burglary, it rose to the level of structural defect. See People v. Archuleta, 191 Colo. 482, 485, 554 P.2d 307, 310 (1976) (concluding that an “essential element of burglary is that at the time and place of entering the structure, the accused must have an intent to commit therein a crime”).
The trial court in this case should have instructed the jury that it could convict Cooper only if it found beyond a reasonable doubt that he possessed the intent to assault Thorman at the moment he first trespassed by: (1) entering unlawfully; (2) breaking and entering unlawfully; or (3) remaining unlawfully. The instruction the trial court gave allowed the jury to convict Cooper upon a finding that he formed the intent to assault Thorman at any time before or after entry without reference to the moment of trespass.
The precise effects of this error are “unquantifiable and indeterminate.” The jury may have believed that Cooper broke into Thorman’s home uninvited with the intent to assault her. Alternatively, the jury may have decided that Cooper broke into Thor-maris home with no such intent, but later decided to assault her during their argument. In sum, the trial court’s jury instructions permitted a finding inconsistent with the requirements of the statute.
Because the trial court did not correctly instruct the jury on an essential element of a crime for which the jury convicted Cooper, we reverse the decision of the court of appeals and remand this case for further proceedings.
Justice RICE dissents, and Chief Justice MULLARKEY and Justice SCOTT join in the dissent.

. Pursuant to People v. Rhorer, 967 P.2d 147, 150 (Colo.1998), we have concluded that violation of a no-contact order by breaking into someone's home can meet the requisite second degree burglary element of committing a crime on the premises. This case was not so charged.

. The prosecution did not argue that the defendant might have entered unlawfully but then also remained unlawfully in the face of his mother's renewed insistence that he leave. Hence, we do not address whether such a circumstance could ever exist. The People argue that anyone who enters unlawfully automatically remains unlawfully and we expressly hold otherwise.

. The introductory comments to Chapter 40, the Colorado Criminal Code, indicate that all references therein to the "New York Code” mean the 1967 New York Revised Penal Code.1963 C.R.S. Vol. 12 (1971 Supp.) at 252. The introductory comments also indicate that references to the "Michigan Proposal” mean the Final Draft of Michigan’s Revised Criminal Code submitted by a special committee of the Michigan state bar in 1967 for revision of that state’s criminal code. See id. The Michigan proposal section 2601(c) contains a definition of “enter or remain unlawfully” that is identical to New York’s definition of the same, and the commentary to the proposal indicates that it was "based on New York Revised Penal Law § 140.05.” Michigan Revised Criminal Code - Final Draft § 2601 cmt. at 195 (Sept. 1967). Because the General Assembly indicated in its comments that our statute was copied from Michigan’s proposal which was in turn copied "without material change” from New York's statute, we assume that the General *1239 Assembly intended to cite New York's Article 140, pertaining to burglary and related offenses, rather than Article 145, which pertains to the unrelated topic of criminal mischief.

. See N.Y. Penal Law § 140.00 (McKinney 1967) (entitled “Criminal Trespass and Burglary; definitions of terms") (emphasis added). In fact, the Practice Commentary to New York's Revised Penal Code indicates that "[b]urglary, as defined in the Revised Penal Law is, in essence, nothing more than a form of criminal trespass with two aggravating factors; (1) the premise invaded constitutes a building, and (2) the intruder enters or remains with intent to commit a crime therein.” Practice Commentary, N.Y. Penal Law § 140.00 (McKinney 1967). Hence, there is no reason to suppose that the element of "remains unlawfully” in New York would vary between simple criminal trespass and criminal trespass plus aggravating factors, or burglary.

. See supra note 3 and accompanying text.