## PACKER v. THE PEOPLE.

1. An indictment found after the adoption of the constitution for an offense committed before the adoption of that instrument, *held* to conclude properly "against the peace and dignity of the people of the state of Colorado." No rights of the people were forfeited by the transition from a territorial to a state government.

2. Section 2 of the schedule to the constitution preserved the law concerning murder as it existed before the adoption of the constitution, so as to enable the courts to punish crimes of that character committed under the territorial organization.

3. Subsequent to the finding of an indictment for murder, the legislature passed an act, without a saving clause, which rendered it illegal to convict the accused of murder, but did not affect the law as

to the punishment for manslaughter; *held* that, under an indictment for murder, the accused might be tried for the crime of manslaughter; *also* that the claim of legislative pardon and that the accused had been once in jeopardy could not avail, he having been illegally convicted of murder.

4. Manslaughter has always been recognized as an included offense in the crime and charge of murder, and to be sufficiently charged and covered by a good indictment for murder.

*Error to District Court of Hinsdale County.*

The facts are sufficiently stated in the opinion.

Messrs. Hames and Brown, for plaintiff in error.

T. H. Thomas, Attorney-General, for defendant in error.

Beck, C. J.    The plaintiff in error, Alfred Packer, was indicted, tried, and convicted at the April term, 1883, of the district court of Hinsdale county for the murder of one Israel Swan. The indictment charges that said murder was committed by the prisoner in Hinsdale county, on the 1st day of March, 1874; said Hinsdale county then being in the territory of Colorado, but at the time of the trial in the state of Colorado. The jury returned a verdict of "guilty as charged in the indictment," and that the killing was premeditated. Motions for new trial and in arrest of judgment were made, and overruled by the court below. The prisoner was then sentenced to be executed; whereupon a writ of error was sued out of this court, and made to operate as a *supersedeas*, so as to stay the execution of the sentence until we could review the proceedings on error.

The case has been argued and submitted, and we proceed briefly to pass upon such questions as appear to demand attention. Several errors have been assigned; but counsel for prisoner say, in their brief filed in the cause, that the only errors relied upon in this court are those which question the validity of the indictment, and that

it will be unnecessary to refer to others, inasmuch as the case will have to be reversed under the rule established in the case of *Garvey v. People*, 6 Colo. 559.

. We agree with counsel for the prisoner that the judgment must be reversed. The sections of the Criminal Code which authorized and prescribed the punishment for murder were repealed by the legislature without a saving clause, *after* the crime was committed, and *before* the conviction now complained of. This point was raised and carefully considered in the *Garvey Case*, and we have no reason for changing the views there expressed. The motions for new trial and in arrest of judgment should have been allowed. Going back, however, to the indictment, we think the court ruled correctly in denying the motion to quash it. That pleading appears to have been correct in form and substance.

The objection made to the concluding clause of the indictment appears to us to be wholly without merit. It was, that the indictment concludes that the killing was committed *against the peace and dignity of the people of the state of Colorado;* whereas, say the counsel, there was no state of Colorado in existence at the time of the killing, in March, 1874. True, the form of government has been changed since the latter date from a territorial form to that of a state. The views of Attorney-General Urmy, that no rights were forfeited by the transition, is an answer to this whole line of argument. The same citizens who comprised the territorial government were the citizens who framed and adopted the state constitution; and upon its taking effect they immediately became citizens of the new state. Instead of sweeping away by a dash of the pen the laws which had been made by this same citizenship, and by which the territory had been governed for many years, the whole body of laws was preserved by the constitution as the laws of the state, both in civil and in criminal matters, until they should be amended or repealed by the state legislature,

and other provisions made to supply their place. Section 1 of the schedule declares that all laws in force at the adoption of the constitution, not inconsistent, should remain as of the same force as before until they expired by their own limitation, or are altered or repealed by the general assembly; also that all prosecutions and rights of action shall continue as if the form of government had not been changed, when not inconsistent with the constitution. Section 2 provides, among other things, that "all indictments which have been found, or hereafter may be found, and all informations which have been filed, or may hereafter be filed, for any crime or offense committed before this constitution takes effect, may be proceeded upon as if no change had taken place, except as otherwise provided in the constitution." These are necessary saving clauses, and proper to be inserted in a constitution; for, while it is not the business of the framers of a constitution like ours to prepare and submit to the people a code of laws, it is their duty to preserve existing laws until the legislature, the proper law-making body, can be convened to amend or repeal such existing laws as they think proper; and to prepare such new laws as appear to them necessary for the benefit of the new state. We do not agree, however, with the attorney-general that past transactions or crimes *shall* be prosecuted under the laws so preserved by the constitution after the same have been modified or repealed. The saving clause inserted in a constitution for the purpose stated is of the same force as a saving clause in a statute. The whole may afterwards be repealed by the legislature without a further saving; and the ends of justice may be thus partially or wholly defeated, according to circumstances. Mr. Cooley, in his Constitutional Limitations, p. 47, thus speaks of the functions of a state constitution:

"It is not the beginning of a community nor the origin of private rights. It is not the fountain of law nor the incipient state of government. * * * It

grants no rights to the people; but is the creature of their power, the instrument of their convenience. Designed for their protection in the rights and powers which they possessed before the constitution was made, it is but the frame-work of the political government, and necessarily based upon the pre-existing condition of laws, rights, habits and modes of thought."

Referring again to section 2 of the schedule, we remark that it preserved the law concerning murder as it existed before the adoption of the constitution, so as to enable the courts to punish crimes of this character committed under the territorial organization. This effect continued until the sections of the former statute prescribing the punishment were repealed by the state legislature. In the present case this occurred before the trial of the accused. There was an exception in the constitutional saving clauses, but it in no way invalidated the prosecutions referred to. It simply required all process to run in the name of "*the people of the state of Colorado,*" and all prosecutions to be carried on in the name and by the authority of "*the people of the state of Colorado;*" and to conclude against the peace and dignity of the same.

This was a proper and legitimate constitutional provision, and in no manner infringed the rights of those accused of having committed offenses prior to the adoption of the constitution. It was but a simple requirement that the form of process and proceedings in the courts should run in the name of the state, whether the subject-matter of litigation arose prior or subsequent to the change in the form of the government. Such objections to the indictment in this case are without force, since the form complained of in no way prejudices the rights of the plaintiff in error.

The prisoner's counsel contend that he has been once in jeopardy, and that he cannot now be remanded for trial upon the included offense of manslaughter contained in the indictment, but that the judgment must be

reversed and the prisoner unconditionally discharged. This proposition cannot be maintained. A similar application was made in *Garvey's Case* after the judgment of reversal. It was contended, upon the hearing of a writ of *habeas corpus*, that the condition of the law was such at and since his trial for murder that he could not lawfully be tried for any offense charged in the indictment. We denied this application for a discharge for reasons given in the opinion. See *Garvey's Case*, 7 Colo. 384.

We still entertain the views there expressed. The basis of the application here is former jeopardy. But Packer has never been in legal jeopardy on account of his crime. The proceedings attending his trial and sentence were clearly illegal, and on account of the errors committed we reverse the judgment. Under the changed condition of the statute the court erred in putting Packer upon trial for murder, for the reason that no law was then in existence to punish him for that offense. It erred in charging the jury that if certain allegations were found to be true, they must return a verdict of guilty of murder. It also erred in overruling the motions for new trial, and in arrest of judgment, and in pronouncing, upon the verdict of the jury, the death sentence. Section 18 of article 2 of the constitution provides: "If the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy." Manslaughter has always been recognized as an included offense in the crime and charge of murder, and to be sufficiently charged and covered by a good indictment for murder. The legislature of 1881 repealed only two sections of the law of homicide; being those which related wholly to the punishment for murder. Neither the law, practice, nor proceedings concerning this class of offenses were interfered with by that body. Subsequently the legislature of 1883 amended the law of manslaughter, but with a saving clause that when such crime was committed before that revision, it should be inquired of, prosecuted

and punished in accordance with the law in force at the time of its perpetration. Laws 1883, p. 151, § 5.

We have seen that there was no force in the objections to the form of the indictment in this case. No such change has been made in the law as would render the indictment in this case wholly void. The crime of murder has always existed in the territory and state of Colorado, without change as to the elements of crime necessary to constitute the statutory offense. It has consequently always been an indictable offense. The form of the indictment, as well as the proceedings for its trial and punishment, have always been substantially the same as at common law.

The district court, as stated, committed errors of law in the judgment and proceedings below; but there appearing to be no substantial objection to the indictment, we perceive no reason why the prisoner may not be put upon his trial thereon for the crime of manslaughter.

Another claim made by the plaintiff in error, or counsel for him, is that he is the recipient of a legislative pardon, and entitled to be discharged from custody on that ground. It is argued that the act of the legislature of March, 1881, upon its approval by the governor, operated and was a legislative pardon as to all past crimes of the grade of murder, and by virtue of that act the crime itself was wiped out so effectually that the prisoner cannot be tried or punished for any offense arising out of the same transaction.

We cannot indorse this proposition. Manslaughter, as well as murder, is a clearly defined statutory offense, indictable as such, and with statutory penalties attached. It has always been punishable according to the law in force at the time of the commission of the offense. We have recognized the rule that under our statute an indictment for murder includes the minor offense of manslaughter, and the accused may be found guilty of manslaughter under such an indictment if the

proof warrants such a verdict. It may also be conceded that if a prisoner be indicted for murder, and the jury return a verdict of "not guilty," that he cannot thereafter be convicted of manslaughter. In the present case, however, the finding was guilty of murder, whereas the court was without jurisdiction to try the prisoner for that crime. The whole proceedings subsequent to the indictment, therefore, being null and void, and it being necessary to reverse and set aside the judgment for this cause, he cannot be said to have been tried upon the charge of manslaughter, much less to have been either pardoned or acquitted of the offense.

The judgment of the district court is reversed, the motion to discharge the prisoner denied, and the cause remanded for further proceedings according to law. Reversed and remanded.

*Reversed.*