**Dante GRISSOM, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 03SC792.**

Supreme Court of Colorado,
En Banc.

June 27, 2005.

Rehearing Denied Aug. 1, 2005.*

---

*Justice KOURLIS and Justice BENDER would grant the Petition; Justice COATS does not par-     ticipate.

James Grimaldi, Denver, for Petitioner.

John W. Suthers, Attorney General, John J. Fuerst III, Assistant Attorney General, Denver, for Respondent.

MULLARKEY, Chief Justice.

## I. Introduction

We granted certiorari in this case to determine whether the court of appeals, in an unpublished opinion, erred in ruling that an alleged complicitor is entitled to an instruction on a lesser-included offense only if the principal himself would be entitled to such an instruction.

We hold that a defendant can be convicted of reckless manslaughter as a complicitor if there is some evidence that the principal and the complicitor entered into a common enterprise to commit a crime. Viewed in the light most favorable to the defendant, the evidence supported giving a reckless manslaughter instruction.

## II. Facts and Procedural History

Dante Grissom, the defendant in this case, was convicted of vehicular eluding and first-degree murder after deliberation under a theory of complicity. Grissom was sentenced to life in prison.

In 1999, Grissom was present at a dice game between Darrick Love and Shante Cannon. Love eventually won the game, but became angry when Cannon refused to pay him. Grissom later agreed to help Love find Cannon to collect the alleged debt and drove Love to several locations in the next few days in search of Cannon.

Approximately one week after the dice game, Cannon was fatally shot near the motel where he had been staying. Witnesses from the motel testified that they heard shots being fired, and saw a white car leave the scene. The police responded to the crime scene, saw a white car and pursued it. After a car chase, the white car crashed into a fire hydrant and two men fled from the vehicle.

After a search on foot, the police found and arrested Love and Grissom. In the course of their search, the police found two handguns and jewelry in the area, all stained with blood. After testing the clothing Love and Grissom had been wearing for gun shot residue, the police determined that Love had been the shooter, and therefore, was likely the principal. The People decided to try Grissom as a complicitor.

At trial, defense counsel argued that Grissom did not know what Love intended and that Grissom merely intended to help Love recover his gambling debt, ostensibly by means short of murder. Defense counsel also claimed that Grissom was very close to the victim and would not have helped Love kill Cannon. Grissom asked the trial court to instruct the jury on reckless manslaughter as a lesser included offense of first degree murder after deliberation.

The trial court refused to give a reckless manslaughter instruction. It explained that it "logically doesn't make any sense at all" to think the defendant, as a complicitor, knew that the principal intended to commit an unintentional killing. The trial court then

instructed the jury on complicity, first degree murder after deliberation, first-degree felony murder, robbery, and vehicular eluding.

The jury convicted Grissom of first-degree murder after deliberation under section 18–3–102(1)(a), C.R.S. (2004), and vehicular eluding under section 18–9–116.5, C.R.S. (2004). He was acquitted of robbery, section 18–4–301(1), C.R.S. (2004) and first-degree felony murder, section 18–3–102(1)(b), C.R.S. (2004).[1]

The court of appeals affirmed the trial court's rejection of the reckless manslaughter instruction, but on different grounds. *People v. Grissom,* No. 00CA1407, slip op. at 10–12, 2003 WL 22113721 (Colo.App. 2003)(not selected for official publication). The court of appeals reasoned that for a court to instruct on a lesser included crime, there must be evidence that the principal committed the lesser crime, here, reckless manslaughter. Finding no evidence to support a theory that Love acted recklessly, the court of appeals found that because the principal could not have received a reckless manslaughter instruction, the complicitor could not either.

## III. Analysis

### A. Complicity for Unintentional Acts

■ Complicity is not a separate and distinct crime or offense. Rather, it is "a theory by which a defendant becomes accountable for a criminal offense committed by another." *People v. Thompson,* 655 P.2d 416, 418 (Colo.1982). We have held that, in Colorado, complicitor liability extends to reckless and negligent forms of homicide committed by the principal. Colorado's complicity statute reads:

A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.

§ 18–1–603, C.R.S.2004.

In *People v. Wheeler,* 772 P.2d 101 (Colo. 1989), we considered whether the defendant's conviction as a complicitor to criminally negligent homicide could stand. The defendant, Laurie Wheeler, was involved in an altercation that took place between her neighbor, Timothy Bothun, and her common law husband, Mitchell Anderson, which resulted in Bothun's death. Anderson was charged as a principal and Wheeler was charged under a theory of complicity liability with second degree murder as well as the lesser included offenses of manslaughter and criminally negligent homicide. The jury convicted Wheeler of criminally negligent homicide.

■ In concluding that Wheeler's conviction should stand, we explicitly rejected Wheeler's argument that it is logically impossible to aid and abet another's unintentional act. We held that our complicity statute "only requires knowledge by the complicitor that the principal is engaging in, or about to engage in, criminal conduct." *Id.,* at 104. Consequently, we explained that "the jury could find Wheeler guilty of criminally negligent homicide on a theory of complicity if it believed that she knew Anderson, the principal, was about to engage in conduct that was a gross deviation from the standard of care that a reasonable person would exercise." *Id.* Similarly, here, the jury could have found that Grissom knew that Love was about to engage in reckless conduct, i.e., conduct that "disregard[ed] a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18–1–501(8), C.R.S. (2004).

■ We reaffirmed the *Wheeler* holding in *Bogdanov v. People* where we explained that when a complicitor intentionally assists or encourages another whom the complicitor knows will thereby engage in conduct that grossly deviates from the standard of reasonable care and poses a substantial and unjustifiable risk of death to another, such a mental state should suffice for complicity

---

1. All of these statutory sections are the same as the statutory sections under which Grissom was charged in 1999 except section 18–3–102(1)(b) which underwent minor revision and of which Grissom was acquitted. For convenience, we refer to the current statutory codification.

liability for an underlying crime defined by the culpable mental states of recklessness or negligence.

941 P.2d 247, 251 (Colo.1997), *overruled on other grounds by Griego v. People,* 19 P.3d 1, 7 (Colo.2001); *see also Palmer v. People,* 964 P.2d 524, 531 (Colo.1998).

*Wheeler* is consistent with cases from other states holding that accomplice liability extends to unintentional crimes committed by the principal when the complicitor and the principal are acting in a "common enterprise." *See, e.g., State v. Foster,* 202 Conn. 520, 522 A.2d 277 (1987)(where A gave B a knife with which to guard the victim after both A and B had assaulted the victim, so that A could find a rape victim who could perhaps identify the victim as the rapist and B killed the victim while A was gone, A could be convicted of criminally negligent homicide as an accomplice); *People v. Turner,* 125 Mich.App. 8, 336 N.W.2d 217 (1983)(where defendant supplied a gun to the principal without a safety catch and instructed the principal in how to aim the gun and the gun then went off killing a bystander the defendant could be convicted as an accomplice for involuntary manslaughter); *State v. McVay,* 47 R.I. 292, 132 A. 436 (1926)(defendant who gave instructions for a steamship to proceed knowing that the boilers were not in good condition could be held liable for the many lives lost as a complicitor to manslaughter).

In *State v. Fennewald,* the Missouri Supreme Court rejected the argument that " 'there can be no common design to commit a negligent act resulting in homicide;' and that 'to render a person guilty of negligent homicide, the negligent act which caused the death must have been the personal act of the party charged and not the act of another' " 339 S.W.2d 769, 771–74 (Mo.1960). The *Fennewald* court then found that accomplice liability for manslaughter could apply to the other party where both parties were recklessly engaged in a drag race. *See also In re Clark,* 2004 WL 1615942 *8 (Ohio App. July 13, 2004) (finding that both drivers in a drag race may be held equally liable because "when two drivers both operate their motor vehicles by traveling at excessive speeds (in the instant case approximately 100 m.p.h.), each driver should be charged with knowledge that such conduct has a high likelihood of resulting in serious injury or death.") *People v. Evans,* 124 Ill.App.3d 634, 80 Ill. Dec. 100, 105, 464 N.E.2d 1083 (1984)(where one of the participants of a drag race collided with two other cars causing three deaths, the other participant, whose car was not involved in the accident, was a complicitor to three counts of reckless homicide).

In these "common enterprise" cases, where both parties are acting in concert to commit a threshold crime, but the principal ultimately commits a more serious crime than the complicitor initially intended, the complicitor can be held liable for the crime committed by the principal. Like the complicitor and principal involved in the cases cited above, Wheeler and Anderson were engaged in a common enterprise to assault Bothun. Anderson entered Bothun's apartment holding a knife in his hand and Wheeler followed Anderson into the room. When a fight broke out between Anderson and Bothun, Wheeler became directly involved by jumping on top of Bothun and pulling Bothun's head back by his hair. As in the above cases, we held that Wheeler could properly be held liable as a complicitor to Anderson's stabbing of Bothun because she aided Anderson in the preceding assault, even though there was no evidence that she intended to kill Bothun.

### B. The Intent Requirement

We observed in *Wheeler* that the General Assembly defined complicity liability to extend to those acts done with the "intent to promote or facilitate" criminal conduct, but that in the complicity context as articulated in section 18–1–603, "intent" retains its "common meaning" and is not synonymous with the statutory definition of "intent" which applies to other crimes. *Wheeler,* 772 P.2d at 104.

In *Bogdanov,* we explained that complicity liability included situations where "(1) the complicitor has the culpable mental state required for the underlying crime committed by the principal; and (2) the complicitor *assists or encourages the commission of the crime committed by the principal 'with the*

*intent* to promote or facilitate.'" 941 P.2d at 251 (emphasis added). However, because we have found complicity liability to extend to negligent and reckless acts committed by the principal, and we have held that "intent" retains its common meaning in that context, we do not require that the complicitor himself intend to commit the crime that the principal commits for crimes defined in terms of recklessness and negligence. In those cases, the complicitor must only intend to aid or assist the principal to engage in conduct that "grossly deviates from the standard of reasonable care and poses a substantial and unjustifiable risk of death to another." *Bogdanov*, 941 P.2d at 251. The legislature has not substantively changed the complicity statute since *Wheeler* and *Bogdanov* were decided. Under the usual rules of statutory construction the legislature's inaction is deemed to have ratified the court's interpretation of the complicity statute. *See, e.g., Mason v. People*, 932 P.2d 1377, 1380 (Colo. 1997).

Some commentators have argued that accomplice liability should extend only to those specific and intentional crimes that the complicitor intended to facilitate and that the principal committed. Under this alternative interpretation, one cannot be a complicitor to the principal's commission of a crime requiring the mental states of recklessness or negligence. One commentator lamented that this court's "extension of accomplice liability for unintended crimes is too broad." Audrey Rogers, *Accomplice Liability for Unintentional Crimes: Remaining within the Constraints of Intent*, 31 Loy.L.A.L.Rev. 1351, 1384, n. 135 (1998).

The Model Penal Code does not extend accomplice liability to the principal's unintentional acts based on a concern that imposing accomplice liability in this context is only appropriate when the accomplice shares the principal's mental state and facilitates the principal's conduct. To illustrate this concern, the Model Penal Code offers examples of difficult situations where it draws the line to limit accomplice liability. For example,

> A lessor rents with knowledge that the premises will be used to establish a bordello. A vendor sells with knowledge that the subject of the sale will be used in the commission of a crime .... A utility provides telephone or telegraph service, knowing it is used for bookmaking. An employee puts through a shipment in the course of his employment though he knows that the shipment is illegal.

Model Penal Code § 2.06 commentary at 315–16 (1985).

Under the Model Penal Code's formulation, accomplice liability is not imposed even when, as in the examples quoted above, the party to be charged as an accomplice has actual knowledge that criminal activity will occur. Although the Colorado General Assembly has incorporated many of the Model Penal Code provisions into our criminal code, the legislature has adopted a complicity statute that is substantially different from the Model Penal Code formulation. *See* ULA Model Penal Code § 2.06 (2001). We assume for purposes of our analysis that the legislature acted deliberately and rejected the rationale of the Model Penal Code when defining complicity.

Although the drafters of the Model Penal Code were uncomfortable with the idea that a complicitor can be held liable for acts the principal committed with a higher mental state than that of the complicitor, not all commentators share the discomfort. Professor Kadish noted that

> It is widely accepted that the secondary party's liability need not be as great as that of the principal, who may have acted with a mens rea that makes him more culpable than the secondary party. The latter, for example, may, in the heat of provocation, induce the primary party to kill, while the primary party may act with cool deliberation. But this does not contradict the conception of the secondary party's liability as derivative. The accomplice's liability derives from that of the principal no less because it may derive from some and not all of his liability.

Sanford H. Kadish, *Complicity Cause and Blame: A Study in the Interpretation of Doctrine*, 73 Cal.L.Rev. 323, 339–40 (1980). We also accept this premise.

In our view, the common enterprise requirement appropriately limits complicitor liability. Colorado's theory of accomplice liability would not extend liability for intentional acts to persons who, for example, lease property to people who use the venue as a brothel as long as the lessors did not intend for the lessees to operate a brothel on the leased property. *See Bogdanov,* 941 P.2d at 252. In cases of reckless and negligent crimes, Colorado would not hold a complicitor liable for the principal's act unless they were engaged in a common enterprise and the complicitor knew the principal was enlisting the complicitor's help in order to engage in criminal conduct. *See Wheeler,* 772 P.2d at 104.

■ We decline to adopt the theory of complicity liability discussed in the Model Penal Code. Instead, we find that an alleged complicitor is entitled to a jury instruction on any offense that is consistent with the defendant's theory of defense and supported by some evidence in the record. Thus, we reaffirm *Wheeler* and state that, in Colorado, accomplice liability tracks that degree of knowledge which the complicitor's actions of aiding and abetting evince and where the complicitor is engaged in a common enterprise with the principal, he or she may be held liable as a complicitor for reckless crimes.

■ In this case, we have the unusual benefit of having a partial record of the principal's trial in the record now before us. When Grissom first appealed, the court of appeals remanded his case to the trial court for a hearing on Grissom's motion for a new trial based on newly discovered evidence. On remand, the trial court admitted the transcript of Love's testimony in his own trial into evidence in this case.

Love was initially tried for first degree murder after deliberation, felony murder, and robbery, but was only convicted of the lesser non-included offense of theft, and was acquitted of felony murder and robbery. The jury could not reach a verdict on the charge of first degree murder after deliberation. Love was retried for first degree murder after deliberation and convicted of the lesser included offense of second degree

murder. At his second trial, Love testified that a third man, James Sudduth, who testified in Love's case as a prosecution witness, shot and killed Cannon. Neither Love nor Sudduth testified in Grissom's case.

This factual background allows us to consider the problem with trials of the principal and the complicitor and how much they overlap. There is no requirement that both parties be tried together, and they are often tried separately. The evidence presented in the separate trials may be different as it was in the separate trials of Grissom and Love. Separate juries hearing different evidence may reach inconsistent or anomalous verdicts as they did in these cases. Grissom, the complicitor, was convicted of premeditated first degree murder, while his alleged principal, Love, has been found guilty of second degree murder. As a result, Grissom, the complicitor, was sentenced to life in prison without the possibility of parole. By contrast, the principal, Love, was convicted of a class 2 felony, which exposed him to a presumptive sentencing range of eight to twelve years imprisonment.

In Grissom's case, the trial court decided, based on its reading of the evidence, that Love's act was intentional, and therefore, Grissom could not receive jury instructions for any crimes requiring a reckless or negligent intent. There was no testimony in Grissom's case from eyewitnesses to the crime. The trial court concluded that Love shot Cannon intentionally because of the number of shots that hit Cannon and the angle of entry. The court also relied on the fact that a gunshot had been fired at Cannon and missed him earlier in the week when Grissom drove Love to find Cannon.

Had Grissom and Love been tried together, perhaps the role of Sudduth and how Cannon was shot would have been determined. As noted above, however, there is, and under the constitution there can be, no requirement that the complicitor and accomplice be tried together. Of necessity, the complicitor's trial is conducted in something of a vacuum with key facts missing. To hold that a complicitor can never be entitled to an instruction on a negligent or reckless crime

works a harsh result that can only be justified on grounds of abstract intellectual rigor. Because that theoretical analysis is not required by our complicity statute or our caselaw, we decline to adopt it.

## IV. Application

A defendant is entitled to an instruction on a lesser offense "as a theory of the case instruction ... as long as there is 'a rational basis in the evidence to support a verdict acquitting him of the greater offense ... and convicting him of the lesser offense.'" *People v. Garcia,* 940 P.2d 357, 361 (Colo.1997); *see also,* § 18–1–408(6), C.R.S. (2004).

■ Indeed, "when considering whether a defendant is entitled to his proffered instruction, the trial court must consider the evidence in the light most favorable to the defendant." *Mata–Medina v. People,* 71 P.3d 973, 979 (Colo.2003). Because we hold that evidence existed sufficient to meet the requirements of section 18–1–408(6), we find that the trial court did not consider the evidence in the light most favorable to the defendant.

While Grissom may have acted intentionally with regard to driving Love around, he may not have done so with knowledge that he was effectuating a first degree murder. The defense argued that Grissom and Cannon had been close friends, and the People did not show that Grissom himself had a motive to help Love kill Cannon. Grissom was never positively identified as being at the scene earlier in the week when a shot was fired at Cannon. Moreover, as discussed above, no eye witnesses testified about the actual shooting of Cannon.

Based on the evidence in this case, the jury could reasonably have accepted the evidence the defense presented that Grissom merely intended to help Love find Cannon to collect the alleged debt, and that Grissom believed he was helping Love collect his debt by a means short of murder. At the same time, the jury could have reasonably believed that both Grissom and Love engaged in reckless conduct.

The prosecution presented evidence that Grissom spent the week driving Love around in order to collect the debt from Cannon. At Grissom's trial, Richard O'Dell, a friend of Cannon, testified that Grissom and Love drove to his apartment, looking for Cannon. O'Dell testified that, in Grissom's presence, Love told him "I am going to get him [Cannon] if I don't get my money back," at which point, Love lifted his shirt to reveal a pistol. Another witness testified that Grissom was present when Love allegedly shot at Cannon earlier in the week. From this evidence, the jury could have concluded that Grissom and Love were engaged in a common enterprise to at least assault Cannon in the course of collecting the debt, thereby exposing Grissom to liability for reckless manslaughter for Cannon's death. Grissom's close friendship with Cannon is some evidence that the state of mind which Grissom and Love shared when they entered into the common enterprise was to collect the alleged debt by some means short of premeditated murder.

■ We have long recognized that reckless manslaughter is a lesser included offense of first degree murder after deliberation. *Packer v. People,* 8 Colo. 361, 8 P. 564, 567 (1885). Only a slight amount of evidence need exist for a defendant to be entitled to lesser included instructions in a homicide case. We have noted that in numerous cases

> courts have required the giving of a criminally negligent homicide instruction when the facts clearly identified the guilty party as the perpetrator, the cause of death was known, and the defendant's actions suggested a higher degree of culpability than defendant argues here.

*Mata–Medina,* 71 P.3d at 979

Indeed, it is a rare case where no evidence in a homicide case would support any lesser included offense instruction. *Ferrin v. People,* 164 Colo. 130, 433 P.2d 108, 111 (1967)("Cases which are 'all white or all black'—either murder or nothing—are not of frequent occurrence; we need only note the many, many decisions in which we have said the lesser degrees of the crime must be submitted in the instructions.").

■ In this case, the defendant introduced evidence that he did not know Love's intent and that because he was close to Can-

non, he did not intend to aid in Cannon's murder. If there "is any evidence however improbable, unreasonable or slight, which tends to reduce the homicide to the grade of manslaughter, the defendant is entitled to an instruction thereon." *Mata–Medina,* 71 P.3d at 978. Even though this evidence may have been slight, Grissom was entitled to a reckless manslaughter instruction because the evidence presented was sufficient under the "any evidence" standard.

## V. Conclusion

In *Wheeler,* we held that the intent necessary to be convicted as a complicitor "only requires knowledge by the complicitor that the principal is engaging in, or about to engage in, criminal conduct." 772 P.2d at 104. Today we limit that holding to common enterprise cases. Under such circumstances, a defendant can be held liable for reckless manslaughter as a complicitor. In the present case, there was evidence to support the reckless manslaughter instruction requested by the defense. As a result, we find that Grissom was entitled to an instruction on reckless manslaughter in this case and we reverse the court of appeals and remand the case with directions to return it to the district court for a new trial.

Justice BENDER dissents, and Justice KOURLIS joins in the dissent.

Justice COATS does not participate.

Justice BENDER dissenting.

The majority reaffirms the position that complicitors can be held criminally liable for the unintentional acts of the principal. I would overrule our precedent, which the majority follows, because it is based upon the illogical proposition that one can be held legally accountable for intentionally assisting another who acted unintentionally, here recklessly, in the commission of a crime. Imposing liability for an unintentional crime committed by the principal eliminates the requirement that a complicitor must intentionally act with the same mental state as the principal, and creates the very real risk that a person will be convicted of a serious crime when the level of his participation in that

crime was either remote or insignificant. The trial court in this case recognized this incongruous result when it ruled that Grissom, as a complicitor, could not commit the crime of complicity to reckless manslaughter. Because I would affirm the ruling of the trial court, I respectfully dissent.

Complicity is a legal theory which holds a defendant criminally liable for the same crime and punishment as the principal because the complicitor intentionally aided, abetted, or advised the principal who committed an offense. *Palmer v. People,* 964 P.2d 524, 528 (Colo.1998). The doctrine serves to punish individuals who have played a distinct role in the commission of an offense "without regard to whether they were or were not actually or constructively present at the time the crimes were committed." 2 Wayne R. LaFave, *et al., Substantive Criminal Law* § 13.2, at 337 (2nd ed. 2003 & Supp.2005).

The General Assembly has defined a complicitor as one who acts with the intent to promote or facilitate an offense by aiding, abetting, or encouraging another to commit the criminal offense. Section 18–1–603, C.R.S. (2004), states:

A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.

To prove that a defendant is complicit in the commission of a crime, the prosecution must prove a dual mental state before the complicitor may be held legally accountable for the offense of another. *Bogdanov v. People,* 941 P.2d 247, 250 (Colo.1997). The complicitor must have: (1) the culpable mental state required for the underlying crime committed by the principal; and (2) the intent to promote or facilitate the crime committed by the principal. *Id.* at 250–51 (citing 2 Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 6.7 (1986)).

Criminal culpability in our system of justice arises out of the very basic theory that an individual is responsible for his own ac-

tions.[2] Thus, accomplice liability stems from the concept that a defendant took a personal and active role in the participation of an offense and not simply because he may have done something that resulted in another's unlawful act. "It is not sufficient that the defendant intentionally engaged in acts which ultimately assisted or encouraged the principal. Rather, the complicitor must intend that his conduct have the effect of assisting or encouraging the principal in committing or planning the crime committed by the principal." *Bogdanov*, 941 P.2d at 251.

Professor LaFave echoes this concern that a defendant may be held criminally liable as an accomplice despite a showing that the defendant's act was not the legal cause of the crime committed by the principal. 2 La-Fave, *Substantive Criminal Law* § 13.2(e), at 354–55. He states that, where there is no requirement that the defendant's act of assistance be part of the legal cause of the crime committed by the principal, liability "could easily be extended to all forms of assistance or encouragement to negligent or reckless conduct" without consideration to the defendant's role in causing the crime. *Id.* at 355; *see also* Audrey Rogers, *Accomplice Liability for Unintentional Crimes: Remaining Within the Constraints of Intent*, 31 Loy. L.A. L.Rev. 1351, 1386, (1998) (stating that courts must not allow liability to rest on "merely foreseeable or knowing acts").

In this case, the majority holds that since the prosecution's theory was that Grissom was a complicitor to the killing committed by the principal, Love, the jury should have been instructed that Grissom, as a complicitor, could be convicted of the lesser offense of reckless manslaughter.[3] Applying the dual mental states of our complicity statute to the crime of reckless manslaughter, this means that a jury must find that Grissom had the identical mental state of the principal who committed reckless manslaughter and

that Grissom had the intent to promote or assist Love when he committed reckless manslaughter.

The culpable mental state of reckless manslaughter requires the principal, the one who caused the death of the victim, to act with conscious disregard of a substantial and unjustifiable risk that a death will occur. § 18–1–501(8), C.R.S. (2004); § 18–3–104. Thus, to be a complicitor, Grissom would need to act with conscious disregard of a substantial and unjustifiable risk that death will occur and, at the same time, intend to assist Love to recklessly cause the death of the victim. One simply cannot intend a result that he does not intend.

Irrespective of the illogical theory of criminal liability that occurs when a defendant is convicted of intentionally aiding, abetting, or assisting a principal to commit a crime that the principal does not intend to commit, the majority holding imposes criminal liability on a person who neither intended nor committed the crime and may have only played an insignificant role in causing the crime.

By stating that the complicitor need not intend to commit the crime committed by the principal, the majority unjustifiably expands the defendant's mens rea as required by the complicity statute and as interpreted in our case law. A complicitor must act with the "intent to promote or facilitate the commission of the offense" by the principal. § 18–1–603. And, the complicitor "must have the culpable mental state required for the underlying crime committed by the principal." *Bogdanov*, 941 P.2d at 252. The majority, however, only requires that the complicitor intend to assist the principal in conduct that "grossly deviates from the standard of reasonable care." Maj. op. at 1285. Thus, contrary to the express requirement found in statute and case law that the defendant in-

---

**2.** *See generally*, Joshua Dressler, *Reassessing the Theoretical Underpinnings of Accomplice Liability: New Solutions to an Old Problem*, 37 Hastings L.J. 91, 103 (1985). Professor Dressler argues that accomplice liability ought to be limited to instances where there is a causal connection between the accomplice's assistance and the ultimate crime committed by the principal. Where accomplice liability is not tied to issues of causa-

tion, unjust results of holding an accomplice strictly liable for the actions of the perpetrator can occur. *Id.* at 102–03.

**3.** Section 18–3–104(1)(a), C.R.S. (2004), states that a person commits manslaughter if: "Such person recklessly causes the death of anther person . . . "

tend to assist the principal to commit a specific criminal act, accomplice liability is expanded to include the intent to engage in any conduct that poses a substantial risk of harm to another.

To reach this result, the majority relies upon this court's statement in *People v. Wheeler*, 772 P.2d 101, 104 (Colo.1989), which only required the complicitor to know that the principal "was about to engage in conduct that was a gross deviation from the standard of care that a reasonable person would exercise." Maj. op. at 1283. This assertion disregards a fundamental tenet of criminal law that ties criminality to the defendant's state of mind when the crime was committed. Under the majority's holding, individuals who are only tangentially associated with the unintentional criminal conduct of the principal may be held criminally liable because of the principal's negligent or reckless behavior.[4] Such a holding is contrary to the fundamental principles of the criminal code which establish criminal culpability based upon the severity of a defendant's conduct and the moral blameworthiness of his state of mind.

When a defendant, through his negligence or reckless conduct, causes the death of another, the General Assembly has provided a mechanism whereby such individuals can be tried and convicted for their acts of negligence or recklessness. *See* § 18–3–104 (Manslaughter); and § 18–3–105, C.R.S.

(2004) (Criminally negligent homicide). The legal theory of complicity, however, does not allow the prosecution to impute to a defendant the reckless or negligent behavior of another which then resulted in an unintentional act simply because a defendant may have encouraged the principal to engage in behavior that creates a substantial or unjustifiable risk of harm. Therefore, I would overrule *People v. Wheeler* and apply the dual intent requirement for complicity as set forth in *Bogdanov v. People*.

A defendant should only be convicted under a theory of complicity when he intends to aide, abet, or assist the crime committed by the principal and not because he does an act, however insignificant it may be, that might cause or encourage the principal to commit an unintentional crime. The majority completely circumvents the dual intent requirement of complicity when it imposes criminal liability for a principal's unintended crime. Hence, I respectfully dissent.

I am authorized to state that Justice KOURLIS joins in this dissent.

---

4. Rogers, *Accomplice Liability for Unintentional Crimes*, 31 Loy. L.A. L.Rev. at 1352–53 (providing examples of where accomplice may be liable for intending principal to engage in specific act, such as speeding, that results in unintentional death); *Jacobs v. State*, 184 So.2d 711, 717 (Fla. Dist.Ct.App.1966) (Carroll, J., dissenting) (giving example of onlookers at a drag race which results in the negligent death of another could be tried as complicitors simply because the race might not have occurred if they had not encouraged the racing).