23CA1133 Peo in Interest of SC 01-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1133
Weld County District Court No. 21JD399
Honorable Audrey Anne Galloway, Magistrate
Honorable Marcelo A. Kopcow, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of S.C.,

Juvenile-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Gomez and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

---

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1      Defendant S.C., a juvenile, appeals his adjudication for second degree assault under a theory of complicity. We affirm.

## I.      Background

¶ 2      On September 3, 2021, the victim and friends were playing basketball in a Greeley public park when another group approached them and asked if they could play basketball together. When the victim's group declined, the other group started a fight. The victim was punched in the face and then kicked in the groin by two individuals. The victim alleged that S.C. punched him in the face, which caused his mouth to bleed. The victim sought medical treatment for the kick to the groin the next day.

¶ 3      A physician performed emergency exploratory surgery and found that one of the victim's testicles had "ruptured," necessitating the surgical removal of a portion of the testicle. The physician testified that the rupture was the result of the attack and characterized the injury as a "serious bodily injury" as defined by Colorado law, given the partial loss and impairment of the victim's testicle. *See* § 18-1-901(3)(p), C.R.S. 2024 (Serious bodily injuries are those involving "a substantial risk of death; a substantial risk of

1

serious permanent disfigurement; a substantial risk of protracted loss or impairment of the function of any part or organ of the body; or breaks, fractures, a penetrating knife or penetrating gunshot wound, or burns of the second or third degree.").

¶ 4 S.C. was charged with second degree assault under section 18-3-203(1)(g), C.R.S. 2024, for causing serious bodily injury to the victim with intent to cause bodily injury.

## A. Plea Discussions

¶ 5 S.C. pleaded not guilty on June 27, 2022, and his speedy trial deadline was set for August 26, 2022, in accordance with section 19-2.5-902(1), C.R.S. 2024 (With some exceptions, once a juvenile enters a not guilty plea "the court shall hold the adjudicatory trial within sixty days."). On August 12, 2022, however, S.C. withdrew his not guilty plea — but confusion concerning his plea agreements resulted in the case proceeding to a magistrate bench trial on October 20, 2022.

¶ 6 The plea deal confusion concerned whether the prosecution and the defense had, in fact, reached a plea agreement on S.C.'s assault charge. The defense later filed a motion to restore S.C.'s

speedy trial right, arguing that on August 12, S.C. withdrew his not guilty plea and waived his speedy trial right while detrimentally relying on the belief that he had reached a plea deal with the prosecution.

¶ 7    In support of its motion, the defense provided a screenshot of an email the defense sent to the prosecution on August 12, following an in-person discussion, with the subject line "RE: [S.C.] 22JD13; withdrawing contested motions."  The body of the email read:

> Just to memorialize what we settled on; let me know if I misrepresented anything.  We didn't talk about absolutely every single detail so let me know if anything is off.
>
> For all cases, 18 months DYS, non-mandatory, credit for time served back to 4/8/22 which is when he pled in 21JD170.
>
> Dismissal of one of the motor vehicle theft cases (22JD92, 22JD147, 21JD383), plea to the felony motor vehicle theft charge in the other two, reserving restitution for all cases.
>
> Dismissal of 22JD13, the MIP (I'm guessing there's no restitution).
>
> Plea to either charge, dismiss the other in 21JD196, reserving restitution.

3

21JD399: either stip to half the restitution amount (around 6500 or so, I believe) with a plea (we didn't talk about what the plea would be to, we would request an assault 3 misdo based on his actual conduct). If you're unable to stip to half, we would try this case and this case only.

Hope I got all that right!

The last case mentioned, 21JD399, was for the assault at issue here. The prosecution replied, "This all looks right to me. Are you ok if I send an email to the Court to let them know we are not proceeding to hearing today?" The defense later argued this exchange showed that the prosecution agreed to allow S.C. to plead guilty to a class 3 misdemeanor.

¶ 8 Later the same day (August 12), the defense confirmed the parties would not be proceeding to a subsequent hearing. Defense counsel stated, "At this time, our request would be — to just vacate all of the trial dates — in all of [S.C.'s] cases and set for — a status hearing. . . . I believe that there will be a resolution — in his cases at that time." The defense also confirmed that S.C. would be withdrawing his not guilty pleas, and the prosecution had no objections. The magistrate accepted the withdrawal of S.C.'s not guilty pleas and vacated his trial dates.

¶ 9     S.C.'s motion also provided another screenshot of an August 17 email exchange, in which the defense asked the prosecution, "When you get a chance could you let me know how you'd like to proceed on the 21JD399 case?  Or in other words if we are able to resolve with the stip to half restitution, assault 3 plea?  Thanks." The prosecution responded on August 22, "We are not able to stipulate to half of the restitution amount.  I am happy to agree to set the case for a restitution hearing as soon as a plea is entered, but I can't stipulate to less than the requested restitution."  The defense argued that this exchange showed that the prosecution "implicitly agreed" to proceed with an agreement allowing S.C. to plead guilty to a misdemeanor.

¶ 10     The defense further alleged that on August 31 the prosecution provided plea paperwork that included a felony charge for the assault case, and when the defense corrected the charge the prosecution "reneged on the previous agreement."  Another email screenshot shows the prosecution stating,

> I'm sorry, I missed the part where you
> requested the misdemeanor assault.  I will not
> be agreeing to that.  I don't believe that was
> discussed at our in person meeting and I don't

5

> know in the email chain where I agreed to that
> change. If that is a dealbreaker then we can
> set that case for trial.

The defense responded and argued that the prosecution's language in the August 12 email reply stating "[t]his all looks right to me" showed that the prosecution agreed to the misdemeanor plea. The prosecution disagreed, stating,

> I agree that I said everything looked correct,
> but I didn't say I was agreeing to the Assault 3.
> When I said it looks right I was saying that it
> matched our in person discussion. I am not in
> [Victim Rights Act] for the Assault 3 charge. I
> apologize for overlooking that part of your
> email, but I absolutely cannot extend an
> Assault 3 offer in that case.

¶ 11 In its motion, the defense argued that the prosecution promised a misdemeanor plea offer to S.C. and then broke that promise — a promise S.C. detrimentally relied on when he waived his speedy trial right and withdrew his not guilty plea. So, the defense requested that S.C.'s original August 26 speedy trial deadline be reinstated — effectively dismissing the case.

¶ 12 The magistrate orally ruled on the matter, finding that on August 12 "there was no finalized agreement" concerning the assault case. This was evidenced by the fact that the defense

6

reached out later on August 17 inquiring how the prosecution would like to proceed with the assault case — indicating the defense understood that the plea had not been finalized.

¶ 13    The magistrate acknowledged that the prosecution's August 22 response, which only concerned restitution, could be "somewhat misleading."  But by that time S.C. had already withdrawn his not guilty plea — which the magistrate noted occurred when "there wasn't a promise by the Government to anything.  No firm agreement on the 21JD399 case.  No agreement on the charge he would plea[d] guilty to or the restitution amount."  Thus, the court found that there was no promise that S.C. could have detrimentally relied on.  This case then proceeded to trial.

B.    Evidence at Trial

¶ 14    At trial it was undisputed that S.C. did not kick the victim in the groin.  The victim identified S.C. as the individual who punched him in the face in a police photo lineup, in a statement given to police, and at trial.  The victim's brother also testified that he witnessed the fight from about twenty feet away and saw S.C. hit

the victim, though the magistrate noted that the court did not give much weight to some of his testimony.

¶ 15    The prosecution's theory at trial was that S.C. "aided" the second degree assault as a complicitor under section 18-1-603, C.R.S. 2024 ("A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense."). As a result, the prosecution argued that S.C. was just as legally accountable as the principal — the individual who kicked the victim in the groin — for the resulting serious bodily injury.

¶ 16    The magistrate orally ruled that given the victim's injuries and his clear identification of S.C. as the individual who punched him — testimony the magistrate found to be "very credible" — the prosecution met its burden. The magistrate noted that even though S.C. did not kick the victim in the groin, S.C.'s punch was part of a "group assault" that caused the victim to suffer serious bodily injury, and S.C. acted with the intent to cause a bodily injury when

8

he punched him.  S.C. was therefore complicit in the serious bodily
injury.

C.    Procedural History

¶ 17    The magistrate sentenced S.C. to serve eighteen months in the
custody of the Division of Youth Services (the same sentence as
agreed to in the global plea agreement concerning S.C.'s other
cases), with 195 days credit for time served.

¶ 18    S.C. then filed a petition for review of the magistrate's orders
with the district court, arguing that the magistrate erred by (1)
rejecting S.C.'s request to reinstate his speedy trial right; (2) finding
that S.C. was guilty of second degree assault under a complicity
theory; and (3) finding S.C. guilty of second degree assault because
there was insufficient identity evidence proving S.C. punched the
victim.

¶ 19    The district court rejected S.C.'s arguments and adopted the
magistrate's findings.  It concluded that (1) there was no promise
for S.C. to have detrimentally relied upon when he waived his
speedy trial right and withdrew his guilty plea; (2) S.C. aided the
group assault causing the serious bodily injury when he punched

9

the victim, and the joint assault could prove complicity; and (3) there was sufficient evidence to prove the elements of the second degree assault charge, including the assailant's identity given the victim's trial testimony and other identifications of S.C. as the assailant.

## II.    Analysis

¶ 20    S.C. now appeals the magistrate's findings and the district court's adoption of two of the findings, arguing that (1) the magistrate lacked sufficient evidence to adjudicate S.C. for second degree assault under a complicity theory and (2) the magistrate erred by failing to reinstate S.C.'s speedy trial right.  Both issues were preserved.  *See People v. Tallent*, 2021 CO 68, ¶ 12.  We discern no error.

### A.    There Was Sufficient Evidence to Adjudicate S.C. for Second Degree Assault Under a Complicity Theory

¶ 21    S.C. first argues that the prosecution presented insufficient evidence to adjudicate S.C. for second degree assault via a complicity theory because it failed to prove that S.C. acted with the requisite intent to aid the individual who kicked the victim in the groin.  S.C. contends that "merely because S.C. hit the same victim

10

who the other juvenile kicked does not, by itself, mean S.C. intended to aid or encourage the other juvenile."

¶ 22    S.C. also argues that the court was left to speculate about issues such as (1) whether S.C. acted in anger or defended someone; (2) the relationship between S.C. and the individual who kicked the victim; (3) where S.C. was in relation to the victim; and (4) if S.C. saw the kick occur.  These contextual gaps, S.C. argues, indicate a lack of intent evidence and show the adjudication was based on mere conjecture.  Consequently, S.C. argues that his adjudication must be vacated.  We disagree.

1.    Standard of Review and Applicable Law

¶ 23    We review sufficiency of the evidence claims de novo.  *See McCoy v. People*, 2019 CO 44, ¶ 27; *Maestas v. People*, 2019 CO 45, ¶ 2.  In gauging whether sufficient evidence supported a defendant's conviction or adjudication, we must determine "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable

11

doubt." *People v. Perez*, 2016 CO 12, ¶ 24 (citation omitted). Evidence is sufficient "if the quantity and quality of the relevant evidence would support a fair-minded jury's finding 'that the guilt of the accused has been established beyond a reasonable doubt with regard to each essential element of the crime.'" *Id.* (citation omitted).

¶ 24    A sufficiency of the evidence review "requires us to 'give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence.'" *Id.* at ¶ 25 (citation omitted). However, these inferences "must be supported by a 'logical and convincing connection between the facts established and the conclusion inferred.'" *Id.* (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)). Appellate courts should not serve as a "thirteenth juror" and invade the province of the fact finder or reweigh conflicting evidence, but "[a] verdict cannot be supported by guessing, speculation, conjecture, or a mere modicum of relevant evidence." *Id.* If we find that a conviction was based on insufficient evidence we must vacate the conviction, and the conviction is not

subject to retrial. *People v. McCoy,* 2015 COA 76M, ¶¶ 29-30, *aff'd on other grounds,* 2019 CO 44.

¶ 25      Under section 18-1-603, a defendant may be held as legally accountable as a principal for a crime "if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense."  Complicity accountability "is not a separate and distinct crime or offense.  Rather, it is 'a theory by which a defendant becomes accountable for a criminal offense committed by another.'"  *Grissom v. People,* 115 P.3d 1280, 1283 (Colo. 2005) (citation omitted).

¶ 26      Complicitor accountability requires that a complicitor have a "dual mental state."  As our supreme court explained,

> section 18-1-603 . . . dictates that a person is legally accountable as a principal for the behavior of another constituting a criminal offense if he aids, abets, advises, or encourages the other person in planning or committing that offense, and he does so with: (1) the intent to aid, abet, advise, or encourage the other person in his criminal act or conduct, and (2) an awareness of circumstances attending the act or conduct he seeks to further, including a required mental

state, if any, that are necessary for commission of the offense in question.

*People v. Childress*, 2015 CO 65M, ¶ 34.

¶ 27    However, "[t]he requisite knowledge is minimal" and a complicitor defendant is not required to "have advance knowledge of the principal's intent to commit a crime." *People v. Alvarado*, 284 P.3d 99, 103 (Colo. App. 2011). Indeed, merely "roughly contemporaneous knowledge by the complicitor of the principal's intent" suffices. *Id.* (citing *People v. Wheeler*, 772 P.2d 101, 104 (Colo. 1989)). But "[i]t is not sufficient that the defendant intentionally engaged in acts which ultimately assisted or encouraged the principal. Rather, the complicitor must intend that his conduct have the effect of assisting or encouraging the principal in committing or planning the crime committed by the principal." *Bogdanov v. People*, 941 P.2d 247, 251 (Colo. 1997), *overruled in part on other grounds by Griego v. People*, 19 P.3d 1, 8 (Colo. 2001).

¶ 28    Furthermore, in cases where defendants act in a "common enterprise," such as "where both parties are acting in concert to commit a threshold crime, but the principal ultimately commits a more serious crime than the complicitor initially intended, the

14

complicitor can be held liable for the crime committed by the principal." *Grissom*, 115 P.3d at 1284; *see also People v. Theus-Roberts*, 2015 COA 32, ¶ 34; *People v. Chavez*, 190 P.3d 760, 768 (Colo. App. 2007) ("When two or more people are involved in the commission of a crime, one charged as a principal may be tried and convicted as a complicitor."). "Complicitor liability 'may be established by reasonable inference from other established facts and circumstances.'" *Chavez*, 190 P.3d at 769 (quoting *Harris v. People*, 335 P.2d 550, 553 (Colo. 1959)).

¶ 29    Collectively, to convict a defendant under a complicity theory, "the prosecution must prove that (1) the principal committed the crime; (2) the complicitor knew that the principal intended to commit the crime; and (3) the complicitor, having the requisite knowledge, aided, abetted, or encouraged the principal in the commission of the crime." *Theus-Roberts*, ¶ 35.  And a defendant commits second degree assault under section 18-3-203(1)(g) if, "[w]ith intent to cause bodily injury to another person, he or she causes serious bodily injury to that person or another."

## 2.    Application

¶ 30    The victim testified that the assailants' group approached them and asked to play basketball, and when the victim's group declined the assailants attacked the victim and the group.  The prosecution presented sufficient evidence to support the theory that S.C. acted with the intent to aid or encourage the assault because the victim identified S.C. as the assailant who punched him and testified that S.C.'s group assaulted him.

¶ 31    The law does not require advance planning by S.C. and the group to assault the victim to hold S.C. accountable as a complicitor.  *See Alvarado*, 284 P.3d at 103.  Section 18-1-603 "only requires knowledge by the complicitor that the principal is engaging in, *or about to engage in*, criminal conduct."  *Wheeler*, 772 P.2d at 104 (emphasis added).  By intentionally punching the victim during the group assault, S.C. thus acted with the intent to cause the victim "bodily injury."  *See* § 18-3-203(1)(g); *see also* § 18-1-901(3)(c) ("'Bodily injury' means physical pain, illness, or any impairment of physical or mental condition.").  A fact finder could reasonably find that S.C. (1) acted with the intent to aid or

16

encourage others in the assault, and (2) acted with an awareness of the circumstances surrounding the assault — namely that members of the group acted with the intent to cause the victim bodily harm. *See Childress,* ¶¶ 29, 34.

¶ 32    Ultimately, this case is most akin to a "common enterprise," where a complicitor and principal act "in concert to commit a threshold crime," but the complicitor may be held liable for the principal's actions even if the principal "ultimately commits a more serious crime than the complicitor initially intended." *Grissom,* 115 P.3d at 1284; *cf. People v. Lee,* 989 P.2d 777, 782 (Colo. App. 1999) (reasonable jury could have found defendant guilty as a complicitor to an assault when he sat on the victim in order to aid others who were kicking the victim).

¶ 33    The evidence presented at trial — viewed in the light most favorable to the prosecution — was sufficient to sustain S.C.'s adjudication. *See Perez,* ¶ 24. The magistrate's findings, and the district court's order adopting the magistrate's findings, were proper.

### B. The Magistrate Did Not Err by Declining to Reinstate S.C.'s Speedy Trial Right

¶ 34    S.C. next argues that the magistrate erred by not reinstating S.C.'s speedy trial right because the prosecution's August 12 email saying "this all looks right" constituted a binding agreement to allow S.C. to plead guilty to a misdemeanor for the assault, or fairly implied an agreement. S.C. adds that the lack of a finalized agreement between the prosecution and the defense did not mean that S.C. could not rely on the prosecution's promise.

¶ 35    S.C. further contends that the fact that the prosecution "missed" the reference in the emails to the misdemeanor plea request does not undermine S.C.'s reasonable reliance on the representation. And the prosecution's eventual disagreement once it discovered the issue, S.C. argues, illustrated that S.C. was reasonably relying on a promise by the prosecution when he withdrew his not guilty plea and waived his speedy trial right. As a result, S.C. argues that his speedy trial right should be reinstated (dismissing the case) or, alternatively, that the original plea agreement should be enforced.

### 1. Standard of Review and Applicable Law

¶ 36 We interpret plea agreements de novo as matters of law, and "[t]his inquiry requires us to ascertain both the existence and scope of the promise being claimed by a defendant." *Benavidez v. People*, 986 P.2d 943, 948 (Colo. 1999). In doing so, "we look to an objective test measuring whether the interpretation being proposed comports with the 'meaning a reasonable person would have attached under the circumstances.'" *Id.* (quoting *Craig v. People*, 986 P.2d 951, 961 (Colo. 1999)).

¶ 37 "Courts that have addressed the validity of plea agreements frequently rely on contract law analogies. A plea agreement, however, is more than merely a contract between two parties, and must be attended by constitutional safeguards to ensure that a defendant receives the performance that he is due." *People v. McCormick*, 859 P.2d 846, 856 (Colo. 1993) (citations omitted). "Because the defendant's due process rights are at issue, the courts may consider extrinsic evidence as an aid to ascertaining the existence and scope of any promises at issue, even under circumstances where such evidence would not be properly

19

considered in the realm of ordinary civil contracts." *Craig*, 986 P.2d

at 961.

> The decisive factors to consider in ascertaining the existence and extent of a defendant's right to enforcement of a governmental promise are: whether a promise was made to the defendant by a governmental official with apparent authority to bind the government, and, if such promise was made, the scope of the promise; whether the defendant reasonably and detrimentally relied on the promise by performing his side of the bargain; and, if the defendant reasonably and detrimentally relied on the promise, the appropriate remedy to which the defendant is entitled.

*People v. Romero*, 745 P.2d 1003, 1010 (Colo. 1987).

2.     Application

¶ 38     Recall that the August 12, 2022, email stated, in part,

> Just to memorialize what we settled on; let me know if I misrepresented anything. We didn't talk about absolutely every single detail so let me know if anything is off. . . .

> 21JD399: either stip to half the restitution amount (around 6500 or so, I believe) with a plea (we didn't talk about what the plea would be to, we would request an assault 3 misdo based on his actual conduct). If you're unable to stip to half, we would try this case and this case only.

> Hope I got all that right!

The prosecution replied minutes later with "[t]his all looks right to me." The question, therefore, is whether this exchange objectively constituted a promise by the government that S.C. could have reasonably and detrimentally relied upon. *See id.*; *see also Benavidez*, 986 P.2d at 948.

¶ 39    We conclude that the exchange does not show that the government made a binding promise that S.C. could have reasonably relied on. The email exchange shows that the defense was "memorializing" a verbal discussion and tried to nail down terms of various agreements. But the parties had not reached a definite agreement when the defense waived S.C.'s speedy trial right and withdrew his not guilty plea later that same day.

¶ 40    The defense's email shows that it was proposing an agreement allowing S.C. to enter a guilty plea in exchange for a stipulation for half the restitution and requesting a class three misdemeanor. If this was not possible the defense would then go to trial on the assault charge. But the prosecution could not have accepted this proposal with its mere response that this "all looks right."

¶ 41    To start, the very first line of the defense's email noted that it was "[j]ust to memorialize what we settled on" and requested that the prosecution "let me know if I misrepresented anything." And the prosecution specifically responded to this request by letting the defense know that nothing seemed amiss. Beyond this, however, if we were to deem the prosecution's response as an acceptance, it is unclear concerning what exactly it is agreeing to. Is the prosecution agreeing to the stipulated half restitution and misdemeanor plea, agreeing that the half restitution is indeed $6,500, confirming it is unable to stipulate to half restitution, or agreeing to go to trial?

¶ 42    Furthermore, the defense said *if* the prosecution could not agree to stipulate to half restitution the defense would proceed to trial, indicating that the defense also understood that a plea agreement had not been finalized. And as the magistrate aptly pointed out, this was supported by the defense's August 17 email — after the not guilty plea was withdrawn — asking, "When you get a chance could you let me know how you'd like to proceed on the 21JD399 case? Or in other words if we are able to resolve with the

22

stip[ulation] to half restitution, assault 3 plea?" *See Craig*, 986 P.2d at 961 (we may look to extrinsic evidence to determine the existence and scope of a plea deal).

¶ 43 The parties' communications certainly would have benefited from clarification concerning S.C.'s plea agreement. But, ultimately, when S.C. withdrew his not guilty plea and waived his speedy trial right on August 12, the prosecution had made no promises that S.C. could have relied upon to his detriment. Thus, neither the magistrate nor the district court erred by refusing to reinstate S.C.'s speedy trial right.

## III. Disposition

¶ 44 The adjudication is affirmed.

JUDGE GOMEZ and JUDGE LUM concur.